[No. 28283. Department Two. May 22, 1942.]

THE STATE OF WASHINGTON, *Appellant,* v. G. W. GOESSMAN, *Respondent.*[1]

[1]Reported in 126 P. (2d) 201.

*The Attorney General, Lyle L. Iversen,* and *William J. Millard, Jr., Assistants (Lawrence W. Thayer,* of counsel), for appellant.

*Shirley Boyd Williams,* for respondent.

*Joseph P. McDermott, amicus curiae.*

SIMPSON, J.—This action was instituted by the state of Washington for the purpose of collecting unemployment compensation taxes. A trial was had to the court, at the conclusion of which judgment was entered in favor of plaintiff. The judgment was dated May 27, 1940. Thereafter, the superior court granted defendant's motion for a new trial. It is from that order the state prosecutes this appeal.

The assignments of error are that the trial court erred in not holding that the respondent was liable for the payment of unemployment taxes and in granting a new trial.

The facts, as disclosed from the record made in the superior court, may be summarized as follows: Respondent, a master barber, is the owner and operator of three barber shops, known as the Booster Barber Shops in the city of Seattle, located at 1616 Broadway, 1306 Third avenue, and 623 Pike street. At the first mentioned shop, one porter and three barbers performed services; one porter and four barbers worked in the second shop; while one porter and four barbers,

including respondent, operated the third shop. Respondent designated the arrangements he had with the barbers as oral leases, under the terms of which he furnished each barber with a chair, mirrors, towels, tonics, soap, and powder necessary in the prosecution of their work, and porter services. The rent received by respondent amounted to forty per cent of the gross receipts collected by each barber. The leases were supposed to run for fifty-two weeks, but were terminable, without cause, by either party upon one week's notice. Customers were given slips showing the amount of the charge, and these were customarily given to the barber in the front of the shop who acted as cashier. The money received was placed in the cash register. The barber at the front chair kept a record of the receipts and paid respondent his share.

One of the barbers, Walter Wilson, who worked at the Broadway shop, operated the chair at the front of that shop. He gave the following testimony:

"Q. Who keeps the record of the money that goes into the till? A. I mark things down in the evening. Q. You mark it down? A. Yes. Q. Is that part of the lease? A. Yes. Q. You agreed to do that? A. Yes. Q. You keep a record of what the other barbers make? A. Yes. Q. And you prepare that record for Mr. Goessman as part of the lease? A. Yes. Q. What type of record do you make for Mr. Goessman? A. I keep track of how much I make and how much rent he is supposed to get. Q. And at the time you entered into the lease he told you what kind of a record he wanted to keep? A. Yes, the same as before, I guess. Q. And you keep it in a certain way? A. Yes. Q. The same as before? A. Yes."

Lee Wilson, another barber working in the Pike street shop, testified that the barber working in the first chair kept track, and made daily checks, of the slips and of the money paid into the cash register by the other barbers.

There was testimony to the effect that each barber was leased a certain portion of the shop and that portion was, at the time the lease was made, marked off with a pencil on the floor, and that a "hall runway" of twenty-four inches in width was left for "the patrons to come in." The barbers testified that each had a key to the shop in which he was working and could come and go as he pleased. Their testimony indicated that they fixed their own prices.

The question for solution is whether the relationship which existed between respondent and the barbers working in the shops was such as to compel the payment of an unemployment compensation tax.

It is the contention of the appellant that the so-called lease agreements were not, in fact, bona fide leases, but amounted to contracts of employment. Respondent contends that the agreements were, in fact, leases of portions of the barber shop; that the barbers were independent of control by respondent; and that, therefore, a tax for unemployment compensation was not due the state.

The trial court granted the motion for a new trial upon the theory, as indicated in its memorandum opinion, that the barbers were not employees within the definition of master and servant or employer and employee, as set out in *Washington Recorder Pub. Co. v. Ernst*, 199 Wash. 176, 91 P. (2d) 718, 124 A. L. R. 667.

The cases of *In re Farwest Taxi Service, Inc.*, 9 Wn. (2d) 134, 114 P. (2d) 164; *Mulhausen v. Bates*, 9 Wn. (2d) 264, 114 P. (2d) 995; *Virginia Mason Hospital Ass'n v. Larson*, 9 Wn. (2d) 284, 114 P. (2d) 976; and *In re Foy*, 10 Wn. (2d) 317, 116 P. (2d) 545, as stated in the recent case of *Sound Cities Gas & Oil Co. v. Ryan*, ante p. 457, 125 P. (2d) 246, have committed

" . . . this court to the view that our unemployment compensation act, which is similar to those of the majority of the states where this form of social security obtains, does not confine taxable employment to the relation of master and servant."

In the cases just cited, we adhered to the following rule announced in *McDermott v. State,* 196 Wash. 261, 82 P. (2d) 568:

"It is unnecessary to determine whether the common law relation of master and servant exists between respondent and the barbers and other operatives in his shop, because the parties are brought within the purview of the unemployment compensation act by a definition more inclusive than that of master and servant."

In the *Ryan* case, we affirmed the rule laid down in *In re Foy, supra,* that, in order to be exempt from the provisions of the act in cases where it was shown that individuals performed services for remuneration, it was necessary to show that the workers came within the exceptions mentioned in subparagraph (g) (5) (i) (ii) (iii) of Rem. Rev. Stat. (Sup.), § 9998-119a [P. C. § 6233-317].

It is quite apparent that the barbers working in the shops did not come within the exceptions mentioned in subparagraph (5), subsections (ii) and (iii), for the reasons that their services were performed within the place "of business of the enterprises" and within the usual course of business for which the services were performed; further, that they were not engaged in an independently established trade of the same nature as that involved in the contracts relating to the services performed. Therefore, the answer to the question present in this case must rest upon our determination as to whether the services performed by the barbers were for remuneration, as that term is used in the act.

Rem. Rev. Stat. (Sup.), § 9998-119 [P. C. § 6233-317] (m), states:

" 'Wages' means remuneration payable by employers for employment. 'Remuneration' means all compensation payable for personal services, including commissions and bonuses and the cash value of all compensation payable in any medium other than cash. The reasonable cash value of compensation payable in any medium other than cash, and the reasonable amount of gratuities, shall be estimated and determined in accordance with rules prescribed by the director."

We are of the opinion that the barbers did receive remuneration, within the meaning of the legislative definition, for the services they performed, and that the so-called oral leases of space in the shop were only a subterfuge intended to escape the payment of the tax.

Courts may not shut their eyes to evident situations, such as present here. A reasonable analysis of the so-called oral leases demonstrates that landlords would not be inclined to lease their property upon terms binding them to supply the shops with tonics, soap, powder, lotions, and other supplies used by the barbers, without some limitation being placed upon the barbers. Speaking of a similar provision in a lease, the supreme court of Wyoming said, in the case of *Tharp v. Unemployment Compensation Commission,* 121 P. (2d) (Wyo.) 172:

"It is suggested for Tharp that in subdivision (5) (A) of Section 2 (i) aforesaid the district court was in error in finding that the 'services performed by said barbers both under the agreement and in fact' were 'under the control or direction of the defendant.' We cannot agree with this contention and for several reasons: While the record shows that the barbers in this shop were accorded generally the privilege of selecting the shop's tonics, lotions, powders and other usual supplies which each of the barbers used for his chair customers, Tharp had to pay for them. Obviously, if

he thought, or the customers complained, that the articles thus selected were not proper but injurious ones, he (Tharp) could decline to procure them and could insist that the barbers use those articles for which he was willing to pay. Obviously, too, if the barbers selected articles of this type unreasonably high in price as Tharp would consider to be the fact, when other articles not so expensive would properly serve the same purpose, he (Tharp) could no doubt insist that the less expensive cosmetics, etc. be purchased and used."

The facts present in this case do not differ in any material way from those stated in the *McDermott* case, in which we found that oral leases of barber chairs were, in fact, "contracts of service within the meaning of the act."

In this case, there was an affirmative showing of a certain amount of control, in that respondent could terminate the leases upon a week's notice, and that his share of the proceeds of barbering were kept by the barber in the front chair and reported to him each day. The absence from the oral lease of a provision recognizing the right of control does not mean that no such right existed. The reservation of the right of control is presumed in those cases in which it is found that one individual performs services upon the premises of another.

The questions with which we are dealing have been presented to the courts of last resort of a number of states having statutes almost identical with ours. *Tharp v. Unemployment Compensation Commission, supra; Young v. Bureau of Unemployment Compensation,* 63 Ga. App. 130, 10 S. E. (2d) 412; *Unemployment Compensation Commission v. Harvey,* 179 Va. 202, 18 S. E. (2d) 390. Reference to the contracts construed in those cases proves that they were either identical to the one presented in the case at bar or more definite

in their terms indicating a lease. In each of the cases, the court held that the so-called lessor was, in fact, an employer under the act.

The order is reversed, with instructions to deny the motion for a new trial.

ROBINSON, C. J., BEALS, BLAKE, and JEFFERS, JJ., concur.

