BRENNER v. STATE ex rel. OKLAHOMA EMPLOYMENT SEC. COMMISSION.

No. 32447. Dec. 21, 1948.

*201 P. 2d 236.*

---

A. E. Montgomery, of Tulsa, for plaintiff in error.

Bruton Woods, Burton Duncan, and Gerald S. Tebbe, all of Oklahoma City, for defendant in error.

LUTTRELL, J. On July 10, 1941, the Oklahoma Employment Security Commission notified L. M. Brenner, dba Brenner the Tailor & Man's Shop, of an additional assessment under the Oklahoma Unemployment Compensation Law, S. L. 1936 (Special Session) p. 30, as amended by article 2, ch. 52, S. L. 1939, p. 317. Brenner protested the additional assessment, and after a hearing held before the commission the assessment was upheld. Brenner appealed to the district court of Tulsa county, which also upheld the assessment. Brenner appeals to this court.

From the evidence adduced at the hearing before the commission it appears that Brenner, prior to May 1, 1939, had operated his tailoring establishment and man's shop in quarters in the Philtower Building at Tulsa. The quarters occupied by him consisted of a storeroom on the first or street floor of said building, and a workshop on the mezzanine floor of said storeroom. During the month of April, 1939, according to his report to the commission for the quarter ending June 30, 1939, he employed 19 workers covered by the Act, and paid contributions thereon. On May 1, 1939, he subdivided the workshop on the mezzanine floor into three compartments, and leased each of these three compartments to former employees. One of these leases was made to Lawrence Tauben, an employee who, under the arrangement put in force by Brenner, made the trousers to tailor-made suits ordered from Brenner. Another was made to Sam Weisman, who made vests to the suits ordered from Brenner, and the third was made to L. J. Sherman and Otto Mayer, who made coats to the suits. These parties, referred to throughout the testimony as lessees, were in reality sublessees, since Brenner held the original lease and paid the rentals thereon. These subleases all provided for a certain rental per year; provided that the sublessees would not use the premises for any other purpose than in the tailoring business, and that Brenner would furnish all the equipment and pay all the utility bills for the space. It was further provided that the subleases were subject to cancellation upon 30 days' notice by either party to the other party in writing. There was nothing in these leases which bound Brenner to give any portion of his work to the lessees in case he did not, for any reason, desire to do so. These sublessees purported to employ in their business various persons who theretofore had worked as employees of Brenner in his workshop, and by an oral agreement one of the lessees was to make the coats; another the trousers, and the third the vests of suits ordered from

Brenner. Brenner sold the material, took the measurements and cut the suits, using an employee who was apparently an experienced cutter for those purposes, and received the finished product from the three lessees. In his report for the months of May and June of the quarter ending June 30, 1939, he reported and paid taxes upon only 6 employees, while theretofore and prior to May 1, 1939, he had reported and paid taxes upon 19 or more employees. While Brenner testified that the lessees paid him the rentals provided in the leases, he produced no record reflecting the payment of such rentals. He testified that he advanced money to the lessees whenever they wanted money, the amount advanced depending apparently upon the amount of work done during that week.

After an extended hearing held pursuant to section 15 (e), ch. 6, S. L. 1941 (40 O. S. 1941 §224e) the law then in force, the commission found:

"It is further found that the said L. J. Sherman, Otto Mayer, Lawrence Tauben, Sam Weisman and Charles Cermak, together with all individuals entered on their payrolls, were in the employ of said protestant, and that all service performed by them was employment within the meaning of the Oklahoma Unemployment Compensation Law, as the alleged contractors and their alleged employees were not and did not continue to be free from control or direction over the performance of such service, both under any contract of service and in fact; and said service was not outside the usual course of business for which such service was performed, nor was such service performed outside of all the places of business of the enterprise for which such service was performed; and said alleged contractors and their alleged employees were not customarily engaged in an independently established trade, occupation, profession or business."

From this order of the commission an appeal was taken by Brenner to the district court of Tulsa county, as authorized by paragraph (g) of said section, which section also provides:

"In any judicial proceeding under this section the finding of the Commission, or its duly authorized representative, as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law."

The district court sustained the order of the commission in all respects, except that it remitted interest for a period of one year on the principal amount of contributions found due. Brenner appeals from the judgment of the trial court, and the commission cross-appeals from that part of the judgment remitting the interest for one year.

Brenner's first contention is that the lessees above referred to were independent contractors, and that the evidence establishes that they clearly fell within the exceptions or exclusionary tests provided by the 1939 Act, in that the evidence showed that the lessees were free from control or direction by Brenner over the performance of their services; that their services were performed outside of Brenner's place of business, and that they were customarily engaged in an independently established trade, occupation, profession or business. Section 19 (g) (6) sets out the exclusionary tests by which an individual performing services for remuneration is deemed not to be an employee, and is, therefore, excluded from the operation of the Act. The statute reads as follows:

"(6) Service performed by an individual for remuneration shall be deemed to be employment subject to this Act unless and until it is shown to the satisfaction of the Commissioner that

"(a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(b) such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enter-

prise for which such service is performed; and

"(c) such individual is customarily engaged in an independently established trade, occupation, profession or business."

It is our view that the evidence not only fails to sustain the contention of Brenner, but amply supports the findings of the commission and the judgment of the district court.

The following facts are clearly established by the evidence:

(1) The leases were for a term of one year and could be terminated by either party on 30 days' notice, making the leases essentially 30-day leases.

(2) All tools and equipment were furnished by Brenner and all utility bills were paid by him.

(3) The contracts for piecework were for no definite number of units, nor for any given time.

(4) Lessees were required to perform any work tendered by Brenner before doing work for any other person. The work done by them for tailors other than Brenner was negligible. The evidence showed that between May 1, 1939, and June 19, 1942, the date of the hearing, the income from work done by the lessees for persons other than Brenner amounted to only $100.

(5) Lessees could not use the leased premises for any purpose other than the tailoring business.

(6) Brenner at times advanced lessees money with which to meet their weekly expenses including payrolls.

(7) None of the lessees had any proprietary interest in his business to the extent that he could operate it without hindrance from Brenner—the tools and equipment were Brenner's, and he was entitled to regain possession thereof, as well as of the space occupied by lessees, upon 30 days' notice.

The first exception or exclusionary test set forth in the statute is the right to control the person doing the work. The statute contemplates not an ostensible control, or semblance of control, but actual control, or control in fact. The method by which the control may be exercised is unimportant if in fact the employer has the right by such method to control the doing of the work.

We can conceive of no situation where control in fact is more effectively retained than here. Whether such control was exercised is immaterial. Any of the lessees who failed to satisfy Brenner as to the quality of work, hours put in, personal habits or otherwise, knew that his lease could be canceled in 30 days, that Brenner could immediately cease sending him work, and that he would thereupon be without means of livelihood. Can there be any doubt that under these circumstances Brenner's wish was the lessees' command?

In the case of Glielmi v. Netherland Dairy Co., Inc., 1930, 254 N. Y. 60, 171 N. E. 906, the court was considering a contract of employment designating Glielmi a dairy product deliveryman, a salesman. Judge Cardozo, in discussing the question of the relationship under the Workmen's Compensation Law of New York, said:

"We think there is evidence to sustain the finding of the board that claimant was a servant, employed to sell the milk and cream of his employer in return for a commission. The contract is adroitly framed to suggest a different relation, but the difference is a semblance only, or so the triers of the facts might find. . . . Much of his apparent freedom is in truth apparent only. . . . If he does anything at variance with the will of his employer, its policy or preference, he knows that his contract of employment may be ended overnight. He is bound hand and foot as long as he works the route at all, his freedom an illusion, and his independence but a name."

Here, if any lessee "does anything at variance with the will of Brenner, his policy or preference," he knows that his contract of employment may be ended at once.

In the situation here the right of Brenner to cancel the lease contract on short notice and to cease immediately to give lessees work was in all essential aspects the right to discharge. In Industrial Commission of Colorado et al. v. Bonfils et al., 241 P. 735, the court, considering the question of whether one Sprigg was an employee under the Workmen's Compensation Law of that state, said:

"He was engaged to haul coal with his own truck to customers of the company at a fixed price per ton; he was allowed to haul it himself or employ others; he was allowed to come and go as he pleased; need not report for work at any time nor at all unless he chose; could work for others if he desired. He called at the yard when he pleased, and was given coal to haul if there was any to be hauled when he called. The company was under no obligation to give him work, and he was under no obligation to work for the company; therefore he could quit when he chose, and the company could discharge him when it chose. This was service for hire.

"A servant is one whose employer has the order and control of work done by him, and who directs or may direct the means as well as the end. Arnold v. Lawrence, 72 Colo. 528, 530, 213 P. 129. By virtue of its power to discharge, the company could, at any moment, direct the minutest detail and method of the work. The fact, if a fact, that it did not do so is immaterial. It is the power of control, not the fact of control, that is the principal factor in distinguishing a servant from a contractor. Franklin Coal & Coke Co. v. Ind. Com., 296 Ill. 329, 129 N. E. 811. The most important point 'in determining the main question (contractor or employee) is the right of either to terminate the relation without liability'. Ind. Com. v. Hammond, 77 Colo. 414, 236 P. 1006. This is a confirmation by this court of the rule above stated as to control, because the right immediately to discharge involves the right of control.

"Sprigg was not employed 'for the completion of a given task according to plan' (Ind. Com., supra); nor to haul a certain amount of coal (McKinstry v. Guy Coal Co., 116 Kan. 192, 225 P. 743, 38 A. L. R. 837); the amount of his work was not fixed either by time or measure (Muncie Co. v. Thompson, 70 Ind. App. 157, 123 N. E. 196); his work did not involve the furnishing of capital, shop facilities or assistants, and he did not contract 'to do certain work' or to furnish any materials (Arnold v. Lawrence, 72 Colo. 528, 213 P. 129). He was not an independent contractor."

In United States v. Vogue, Inc., 145 Fed. 2d 609, the Circuit Court of Appeals, in considering the question of whether seamstresses were independent contractors or employees within the Social Security Act, as respects employee's liability for insurance contribution and unemployment taxes, in an opinion by Parker, Circuit Judge, said:

"They were engaged in work which was an important part of the work of plaintiff's store; they occupied premises over which plaintiff exercised control; they were subject to call by plaintiff; they did work which plaintiff gave them to do; they were paid for their work by plaintiff; and when they worked for a weekly wage and were unquestionably subject to plaintiff's orders they handled the work in precisely the same way as when working on the piecework basis.

"The law of independent contractors has an important place in the law, but surely it was never intended to apply to humble employees of this sort, so completely subject to the domination and control of the employer. To allow the employer to escape the consequences or to deny the employee the benefits of the employer-employee relationship because of agreement that payment be made on the piecework basis or because the employee exercises the judgment with respect to the work that is expected of any skilled worker, is to lose the substance of the relationship in attempting to apply certain rule of thumb distinctions in the law of independent contractors."

The record also shows that the evidence produced by Brenner did not bring the lessees and their employees within the second exclusionary test provided by the law.

Under the facts here there can be no question but that the lessees were engaged in work which was an important part of plaintiff's tailoring business. They occupied premises over which plaintiff exercised control by reason of the fact that he could terminate the right to occupy the premises on short notice. They were likewise subject to call by plaintiff for the reason that if they saw fit not to work at any time he could cease giving them work. They did work which plaintiff gave them to do and were paid therefor by plaintiff. The record is clear that for years prior to the execution of the leases and the alleged contracts for unit work lessees worked for Brenner for wages, unquestionably were subject to his orders, and so far as the record shows handled the work in precisely the same way as when working on piecework basis.

Passing to a consideration of whether lessees were "customarily engaged in an independently established trade, occupation, profession or business", in addition to facts hereinbefore stated, we find that Brenner, on direct examination by his own counsel, testified as follows:

"Q. You heard testimony here today with reference to a purported transaction in your business, and which is alleged to have occurred in 1939, is that right? A. That is right. Q. I wish you would tell the board in your own words briefly what the facts are about that. A. Well, business was getting poor and I wanted to have more time and work out my advertising campaign; promote more business, and therefore I decided to sublease the shop to these contractors to relieve me of all management of the workshop, and give me more time for the promotion of the work. Q. Mr. Brenner, did you formulate that change in business by written contract? A. Yes. Q. The contracts which have been stipulated and entered into are the contracts which were signed and made to evidence that change, is that right? A. Yes."

It is apparent from the quoted testimony that lessees were not interested in establishing independent businesses,

but that Brenner made the decision for this arrangement for reasons of his own and for his own benefit, and so far as the record shows it was his decision alone without any consultation with the lessees, as employees.

In Life & Casualty Insurance Co. v. Unemployment Compensation Comm., 178 Va. 46, 16 S. E. 2d 357, the Supreme Court of Virginia said:

"We think it is elemental that one engaged in an independent interprise, business or profession, has a proprietary interest therein to the extent that he can operate it without hindrance from any individual or force whatsoever. These agents have no business to which they have a right of continuity. They have nothing they can sell or give away. All they have is subject to cancellation and destruction upon severance from the company's service."

In the case of Murphy v. Daumit, 387 Ill. 406, 56 N. E. 2d 800, the Supreme Court of Illinois said:

"Giving consideration to the requirements of subparagraph (C), it is apparent that the Act contemplates that one who is engaged in an independent enterprise is an individual who has a proprietary interest in such business to the extent that he can operate same without hindrance from any individual whatsoever and whose business also is free from control. Here the so-called dealers had no business to sell or give away. They were dependent on the appellant for their employment. Their continuity therein depended upon their accomplishing their tasks to the satisfaction of the appellant. Although appellant urges that the individuals were free to carry other lines, it is a fact that there is no evidence that any of the individuals did so. Their endeavor existed only by reason of the employment for the appellant and they were subject to his willingness to retain them and were constantly subject to discharge, at which time they were out of employment."

The lessees here had no proprietary interest in a business to the extent that they could operate it without hindrance from Brenner, or a business free from his control. They had no business which they could sell or give away. They were

dependent on Brenner for their employment, and their continuity in the business depended upon their accomplishing their tasks to his satisfaction. Their endeavor existed only by reason of their employment by Brenner, and subject to his willingness to retain them and constantly subject to discharge, at which time they were out of employment. The lessees, under the facts in this case, were not "customarily engaged in an independently established trade, occupation, profession or business."

In the case of Unemployment Compensation Commission of Virginia v. Collins, 182 Va. 426, 29 S. E. 2d 388, the court, considering a similar provision in the law of that state, said:

"Moreover, we think that it is clear under the evidence that neither Hester nor Ayers was conducting a business which was set up and established 'independently' of that of Collins. Each was merely carrying on Collins' business. In the year 1941, Collins conducted his sawmill business in his own name for a period of 17 or 18 weeks, or just short of the period of twenty weeks required to bring him within the operation of the. statute. He then delivered the equipment to Hester who, in effect continued the identical operation which Collins would have continued if he had not attempted to evade the consequence of the Act. The same is true of the year of 1942 in which the arrangement was made with Ayers. No doubt the carefully worded language of the statute, which we have analyzed, was designed to meet a situation of this character. An employer may not evade the consequences of the Act by the simple expedient of converting, for a short period, his employees into 'lessees' or 'vendees' of the identical equipment through the use of which these employees have performed service for him."

The conclusion is inescapable that the reason for the reorganization of protestant's business was to avoid this tax. If the reorganization has accomplished in substance the things required by the statute to take the employment of these alleged contractors out from the operation of the Act, then the tax is legitimately avoided. We think, however, that the change here was in form only, and that the same relationship in reality existed, under the law, after the lease contracts as before.

In Earp v. Jones, 131 Fed. 2d 292, the Circuit Court of the Tenth Circuit stated:

". . . When a new tax comes into existence one is free to arrange or change his method or mode of operation to avoid the attachment of the tax or minimize the effect thereof. The change must, however, be real and substantial. One may not merely change the form but do business in substantially the same way. An essentially new and different economic unit must be formed. This appellant failed to do. All he did was to clothe himself in the cloak of partnership, but when the cloak was removed, there stood the same individual, doing business in substantially the same way, and for all practical purposes, unimpeded or unhindered by any restriction which usually flows from a partnership relation. For all practical purposes, he surrendered nothing. He still was a monarch of all he surveyed."

The commission having determined that individuals performing services for Brenner were deemed to be in his employment and subject to the Act, and having made an assessment against Brenner for contributions by reason thereof, the burden was upon Brenner to show that such individuals' services came within the three classes designated as (a), (b) and (c) of section 19 (g) (6). Young v. Bureau of Unemployment Compensation, 63 Ga. App. 130, 10 S. E. 2d 412.

Attention has heretofore been called to that part of 40 O. S. 1941 §224, paragraph (g), which provides:

"In any judicial proceeding under this section the findings of the Commission, or its duly authorized representatives, as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law."

A similar provision with reference to the Board of Review is found in sec-

tion 6 (i). The court, in Burgin v. Mid-Continent Petroleum Corp., 188 Okla. 645, 112 P. 2d 802, after quoting the section just cited, said:

"This chapter makes issues of fact final where supported by the evidence, except in a case where the petitioner alleges fraud."

In Copeland v. Oklahoma Employment Security Commission, 197 Okla. 429, 172 P. 2d 420, which was an action to review a decision by the Oklahoma Employment Security Commission and the Board of Review denying plaintiff's claim for benefits under the Oklahoma Employment Security Act, the court quoted a similar provision of the law in the opinion, and in syllabus No. 2, said:

"In a proceeding for judicial review of an order of the Board of Review, under Subd. (d) (7), Title 40, sec. 216, O. S. 1941, the findings of the Board of Review as to facts, if supported by evidence, in the absence of fraud, are conclusive and the jurisdiction of the court is confined to questions of law."

Our Workmen's Compensation statute provides that the decision of the Industrial Commission shall be final as to all questions of fact.

In Burch v. Slick, 167 Okla. 639, 31 P. 2d 110, this court used the following language:

"The commission has the power to weigh the evidence and draw its own conclusions, and such commission, like a court or jury, may draw reasonable inferences from the facts and circumstances in evidence, and where it draws such inferences from facts and circumstances which in their nature are such that reasonable men might draw either the same or opposite inferences, this court will not say that the facts found as a result of such inferences are not sustained by sufficient evidence."

In the cases cited by Brenner, such as Realty Mortgage & Sales Co. v. Oklahoma Employment Security Comm., 197 Okla. 308, 169 P. 2d 761, and Peters v. California Building & Loan Ass'n, 116 Cal. App. 143, 2 P. 2d 439, the evidence established lack of control in fact. In the instant case the evidence does not.

Under the facts in this case, we think that the findings of the commission that the lessees and their employees were in fact employed by Brenner is amply supported by the evidence, and that no reasonable man after reading the evidence and considering the facts and circumstances shown thereby, would reach a different conclusion.

Brenner also contends that the judgment is erroneous and should be reversed for the reason that the original notice of assessment served upon him stated that he owed an additional assessment of $870.96, and that the assessment made by the final order of the commission was for the sum of $1,205. But it appears that this increase in assessment was made upon a report voluntarily made by Brenner after the hearing, in order to avoid an investigation of his records for the second, third and fourth quarters of the year 1940, and that the final order of the commission included the tax which it found due for those quarters in addition to the amount stated in the notice, which was for the year 1939 and the first quarter of 1940. The record does not disclose that Brenner made any application to produce any testimony whatever, after the hearing, with reference to the amount due for those quarters. If the judgment of the commission finding that the lessees and their employees were in fact employees of Brenner was correct, the assessment for the remaining quarters of 1940 would be merely a matter of computation.

Furthermore, the law in force at the time of the hearing [40 O. S. 1941 §224 (e)] empowers the commission to "make an order confirming, modifying or vacating the prior determination and assessment", and to "make an assessment of any contribution found to be due and not theretofore assessed". It further provides that regardless of the assessment of which the employer is notified, the commission may make further adjustments, corrections or assessments.

The contention now made that the commission could not include in its order an assessment upon the last three quarters of the year 1940, made upon information furnished by Brenner, is, in our judgment, without substantial merit.

As heretofore pointed out, the district court of Tulsa county disallowed interest upon the principal amount for a period of one year, making the amount of interest allowed $317.32 instead of $462, which amount was assessed by the commission. In its cross-appeal the commission points out that this was apparently due to a misconception by the trial court as to the reason for the failure on the part of the commission to enter its order at an earlier date. The record discloses that this delay was caused by a stipulation entered into by Brenner and the commission whereby it was agreed that Brenner might introduce further evidence if he desired, and that pursuant to that stipulation a written stipulation was entered into, which is contained in the record, whereby it was agreed that certain documentary evidence thereto attached should be considered by the commission in arriving at its decision. The date of this written stipulation, and the exact time at which it was filed, is not shown in the record, but it was entered into, and filed, at some time subsequent to February 24, 1943, since an affidavit bearing that date was attached to the stipulation. The order of the commission was dated September 15, 1943. In the absence of any evidence as to the date the written stipulation was filed with the commission, there is nothing in the record tending to show that the commission unduly delayed its decision, or that any reason existed for undue delay on its part. The judgment of the trial court deducting the interest for one year is not sustained by the evidence set forth in the record.

The judgment of the trial court is therefore modified by assessing Brenner with the full amount of the interest found due by the commission, being the sum of $462, and as modified is affirmed.

HURST, C. J., DAVISON, V. C. J., and RILEY, WELCH, CORN, GIBSON, and ARNOLD, JJ., concur.