Everett SANDERS, d/b/a Suburban Acres, Sheridan Village and Turley Barber Shops, Plaintiff in Error,

v.

OKLAHOMA EMPLOYMENT SECURITY COMMISSION, Defendant in Error.

No. 41502.

Supreme Court of Oklahoma.

July 18, 1967.

Houston, Klein & Davidson by E. J. Eagleton and Richard T. Sonberg, Tulsa, for plaintiff in error.

Milton R. Elliott, Chief Atty. for Oklahoma Employment Security Commission, Oklahoma City, for defendant in error.

HODGES, Justice.

For the year 1963, Everett Sanders was assessed unemployment taxes for employer's contribution by the Oklahoma Employment Security Commission. From an adverse ruling by the district court, which af-

firmed the findings and assessment of the Commission, Sanders appeals.

Sanders is the owner and operator of three barber shops in Tulsa, Oklahoma. The three shops are staffed with nine barbers. The relationship of the individual barbers to Sanders determines the legality of the assessment by the Commission. Sanders contends that each barber is engaged in an independent trade or profession, while the Commission asserts a status of employer-employee.

Introduced into evidence was a written agreement between Sanders and the barbers which was designated and styled as a "Lease." Each agreement provided for the lease of a particular chair to the barber in one of the shops for a term of three years. In addition to furnishing each barber with a chair, the lease also required Sanders to furnish all necessary equipment and supplies, except each barber was to supply his own "hand tools" such as combs, brushes, clippers and razors. In return, the barbers paid Sanders thirty percent out of their earnings.

Sanders testified that each barber is engaged in his trade as an independent barber; that no wages are paid to the barbers; that there is no contract of hire; that he has no control, supervision or directive powers over the barbers; that with the exception of a thirty day written notice, he has no authority of dismissal or termination.

The evidence further discloses that Sanders operates the three barber shops as a sole proprietor and that he has a barber chair for his own use in each shop. In two of the shops one designated barber collects Sanders percentage from the other barbers and receives a five percent remuneration from the amount collected.

Sanders argues that the failure of the Commission to specifically find that he paid wages to the barbers or that the barbers performed services under a contract of hire, places an unwarranted burden upon him to disprove the employment.

We find no merit in this assignment of error. The Commission did find in its order that the individual barbers "were in the employ of Everett Sanders, and service performed by them was employment within the meaning of the Oklahoma Employment Security Act * * *." Sec. 229 (f) (1) defines "employment" as "any service * * * performed for wages or under any contract of hire, written or oral, express or implied." The use of the words "employ" and "employment" by the Commission denotes both "a service performed for wages" and "a contract of hire," as their usage was predicated upon the statutory definition within the meaning of the Oklahoma Employment Security Act.

We proceed next to the issue whether the barbers were employed by Sanders for wages or under a contract of hire, and if employed, whether the services rendered come within the exclusions as provided in 40 O.S.1961, § 229 (f) (5), which appears as follows:

"(5) Services performed by an individual for wages or under any contract of hire shall be deemed to be employment subject to this Act unless and until it is shown to the satisfaction of the Commission that:

(a) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of hire and in fact; and

(b) Such individual is customarily engaged in an independently established trade, occupation, profession, or business; or

(c) Such service is outside the usual course of the business for which such service is performed and that such service is performed outside of all the places of business of the enterprise for which such service is performed."

The interpretation and application of the word "employment" as found in the various state unemployment compensation acts have been the subject of inquiry in a number of

states having similar acts to the Oklahoma Employment Security Act. Generally, the conclusions adopted by these courts have been upon two diverging concepts. Some jurisdictions have applied the common law rules of master and servant or employer-employee, while others have held that the term is broader in meaning and application than its common-law counterpart, and that the test of coverage is based upon the statutory definitions contained in the act. See 81 C.J.S. Social Security and Public Welfare § 102.

■ We have heretofore considered the master and servant principles in the unemployment compensation cases of Realty Mortgage and Sales Co. v. Oklahoma Employment Security Commission, 197 Okl. 308, 169 P.2d 761; Brenner v. State, 201 Okl. 70, 201 P.2d 236, and Perma-Stone Oklahoma City Co. v. Oklahoma Employment Security Commission, Okl., 278 P.2d 543. In the Realty case we did recognize the two interpretive concepts, but stated that a determination was not necessary under the facts therein presented. Such a determination is, also, not necessary in the present case. But we did hold in the Realty and Perma-Stone cases that the words "employer" and "employee" must be interpreted in their usual and ordinary sense with a view of giving full effect to the stated purposes and declarations of public policy as contained in the Act, which was to relieve and limit the "serious social consequences of unemployment."

Sanders cites the Realty and Perma-Stone cases in support of his proposition. The Realty case involved salesmen who sold real estate and made real estate loans which were processed through the office of a real estate broker. Upon completion of the sales or loans, the salesmen were paid a commission. We determined that the relationship was not of employer-employee but an association engaged in a joint venture. In the Perma-Stone case the salesmen procured contracts for a company engaged in the manufacture of a stone veneer finish for houses, and they were similarily paid a commission. We concluded that the salesmen were independent contractors upon the basis that they were free from control and direction of the company.

In both cases the analogous facts, which are absent from the instant case, show that the salesmen were free to come and go when they pleased and worked in whatever manner they chose. They were free to engage in other businesses. The salesmen contributed their time and effort to effect sales, but worked without any supervision or control and occupied a position in what is commonly designated as "outside salesmen."

In the Brenner case, supra, the owner of a tailoring business subdivided his workshop into compartments and leased the compartments to former employees for a term of one year terminable on a thirty-day notice. We held that the "lessees" were subject to the tailor's control and adjudged them to be employees under the unemployment compensation act. In that case we pointed out the workers' purported freedom under the lease was "an illusion and their independence but a name," and that if they do "anything at variance with the will of Brenner, his policy or preference, they know that their contract of employment may be ended at once." In further elaboration on the lack of control, we said:

"The lessees here had no proprietary interest in a business to the extent that they could operate it without hindrance from Brenner, or a business free from his control. They had no business which they could sell, or give away. They were dependent on Brenner for their employment, and their continuity in the business depended upon their accomplishing their tasks to his satisfaction."

■ We are of the opinion that in the present case the lease between the barbers and Sanders is nothing more than a contract of employment. Sanders is the sole proprietor of the three barber shops, and each of the barbers is performing a part of the regular business being conducted by Sanders. The lease makes no real or sub-

stantial change in their relationship. The law considers substance rather than form. The execution of the lease may not serve as a vehicle to circumvent what would otherwise be a statutory obligation.

In the Realty case, supra, we define employment as follows:

"The term 'employment' as used in the statute, when due consideration is given to the exclusionary amendment above mentioned, necessarily implies a situation where one person is obligated, by an express or implied agreement, to perform services for another, and an obligation on the person served to pay for such services."

The ultimate purpose of Sanders in establishing these three businesses was for profit. The barbers were employed to carry out that purpose. They were obligated to render such services as were ordinary and incidental to that type of business. All of the facilities and equipment together with the maintenance and upkeep were provided and furnished by Sanders, with the exception of the barbers' "hand tools." It is inconceivable to say that the barbers could vacate the barber chair during the term of the lease and render no service. For these services performed the barbers were paid a commission out of the receipts.

In the case of Unemployment Compensation Commission v. Harvey, 179 Va. 202, 18 S.E.2d 390, the defendant owned and operated three beauty salon establishments at three separate addresses in the City of Richmond. Each beauty operator paid a rental for a booth in the salon under a lease agreement. In upholding the validity of the employer's contribution to the unemployment compensation fund under an act similar to Oklahoma, the court said:

"Even at common law the existence of the relation of master and servant does not depend upon the payment of wages or a salary by a master direct to the servant. The compensation of the employee may consist of commissions or a share of the profits of the employer's business. [citations] Moreover, the statutory definition of 'wages' found in the act and quoted above, includes 'commissions and bonuses' and even 'gratuities' paid to the worker by a customer."

In the present case as distinguished from the Realty and Perma-Stone cases, the barbers were obligated to perform these services at the location of Sanders' business. The shops had regular business hours during which time the barbers were expected to perform these services.

Title 59 O.S.1961, § 75, provides "No barber shop shall operate in this State unless at least one registered barber is in charge thereof. * * *" Under Title 59 O. S.1961, § 83, each barber shop is required to obtain a health certificate after an annual inspection by the county health officer. This section also provides in part:

"* * * if such County Health Officer shall find, after examination, that the barber law of this State has been fully complied with and that the sanitary requirements of the Board of Barber Examiners are not being violated, HE SHALL ISSUE A CERTIFICATE TO THAT EFFECT TO THE PROPRIETOR OF SUCH BARBER SHOP and said certificate shall be kept posted in a conspicuous place within the said barber shop * * *" (Emphasis supplied).

Under the above statutes the individual barbers could not be considered as a "proprietor" or "proprietors" under the facts herein presented. They occupy the premises over which Sanders exercises control. Sanders, as proprietor of the barber shops, is specifically charged with such supervision and management as is necessary for compliance with the sanitary and barber regulations. With this mandatory responsibility Sanders has a right and duty to control the actions and conduct of the barbers, especially upon matters which affect the public health.

Sanders also argues that he does not employ the barbers, but that each individual barber is "plying his own independent trade—building his own personal clientele and operating as he deems best." He

points out that the barbers collect their own fees, keep their own hours, supervise their own work, and that he has no control over how their work is performed.

"A servant is one whose employer has the order and control of work done by him, and who directs or may direct the means as well as the end." Brenner v. State, supra.

The three barber shops in the present case are operated under the name of Sanders and are held out to the public as such. The public knows nothing of the chair leasing agreement, and insofar as they are concerned, a customer is a customer of the shop. In any event, Sanders has statutory obligations to the public as above set out. Also, by virtue of his power of discharge within thirty days, he has reserved effective control. In the Brenner case where the lease contained a thirty-day terminable clause, this court quoted from Industrial Commission of Colorado et al. v. Bonfils et al., Colo., 78 Colo. 306, 241 P. 735, as follows:

" The most important point 'in determining the main question (contractor or employee) is the right of either to terminate the relation without liability.' "

and,

"It is the power of control, not the fact of control, that is the principal factor * * *"

And our court said:

"Whether such control was exercised is immaterial. * * *"

In Mississippi Employment Security Commission v. Logan, 248 Miss. 595, 159 So.2d 802, the court sustained an employer's unemployment assessment where he operated a barbershop, notwithstanding a chair leasing agreement which attempted to establish an independent relationship and provided that either party could terminate the agreement within ten days. The court in applying the common law of master and servant stated:

"One may be actually under slight supervision or control, but still be an employee where the right of control existed and the service performed was a part of the regular business of the alleged employer."

In State v. Goessman, 13 Wash.2d 598, 126 P.2d 201, the defendant operated three barber shops and had an oral agreement with each barber for the lease of a particular chair with the proviso that the leases were for a term of fifty-two weeks, but were terminable, without cause, by either party upon one week's notice. The court held the unemployment assessment upon the employer to be valid. In rejecting the employer's argument that he had no right of control under the leases, the court stated:

"The absence from the oral lease of a provision recognizing the right of control does not mean that no such right existed. The reservation of the right of control is presumed in those cases in which it is found that one individual performs services upon the premises of another."

We do not see where the "lease" agreement made any substantial change in the relationship between Sanders and the barbers. For all practical purposes, the operation of Sanders' business is the same as before. This question of the relationship between a barber and an owner-operator under a chair leasing agreement for purposes of employers taxation for unemployment compensation has been decided in a number of states in addition to the above cited cases. In each instance these courts have held, under statutes almost identical to ours, that the so-called lessor was, in fact, an employer under the Act. Tharp v. Unemployment Compensation Commission, 57 Wyo. 486, 121 P.2d 172; State Unemployment Compensation Commission v. Brown, 255 Or. 306, 358 P.2d 502; Byrd v. Employment Security Agency, 86 Idaho 469, 388 P.2d 100.

We are of the opinion that the Commission was fully justified in finding that the barbers were employees of Sanders, and that the services performed by the barbers

did not come within the exception as provided in the Act.

Judgment affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, LAVENDER and McINERNEY, JJ., concur.

BERRY, J., dissents.