2008 OK CIV APP 110

**CLUB PARADISE, INC., Plaintiff/Appellant,**

v.

**OKLAHOMA EMPLOYMENT SECURITY COMMISSION, Assessment Board of Oklahoma Employment Security Commission, and James Sommer, Defendants/Appellees.**

No. 104,725.

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 4, 2008.

Certiorari Denied Dec. 8, 2008.

Glennella P. Doss, Tulsa, OK, and W. Kirk Clausing, W. Kirk Clausing, Inc., Tulsa, OK, for Plaintiff/Appellant.

John E. Miley, Oklahoma City, OK, for Defendants/Appellees.

ROBERT DICK BELL, Judge.

¶1 Plaintiff/Appellant, Club Paradise, Inc. (CPI), appeals from the trial court's order affirming the decision of Defendant/Appellee, Oklahoma Employment Security Commission (OESC), which assessed unemployment taxes on CPI for dancers/entertainers that the adult entertainment business had misclassified as independent contractors instead of employees. For the reasons set forth below, we hold the dancers were properly classified as employees of CPI and affirm the judgment.

¶2 CPI operates a "gentlemen's club" which maintains a "sexually oriented business" license issued by the City of Tulsa. A central element of the business is its dancers. While CPI treats its bartenders, waitresses and support staff as employees, the club characterizes its dancers as independent contractors. Accordingly, CPI did not report any wages for the dancers on its quarterly unemployment tax reports.

¶3 In November 2003, a tax enforcement officer of OESC determined the CPI dancers were misclassified as independent contractors and assessed additional unemployment taxes against the club. CPI paid the assessed amounts under protest and sought review from the OESC Board of Assessment (Board). The Board affirmed the assessment by final Order of Decision and CPI appealed to the district court. The district court held, *inter alia*, that the Board failed to elicit or record adequate evidence to support its finding that the dancers were employees of CPI. Therefore, pursuant to 75 O.S.2001 § 322(2), the trial court remanded the matter to the Board for further hearing on six specified questions of fact.[1]

¶4 The Board conducted another hearing on October 12, 2006, at which CPI presented additional evidence and testimony. The Board issued a second Order of Decision, dated October 17, 2006, again affirming the tax assessment against CPI. When the Board allegedly refused to transmit the new transcript and record to the trial court until CPI filed a new appeal, CPI moved the district court to set aside, modify or reverse the second Board order and filed a request for an emergency hearing regarding the trial court's jurisdiction. The trial court denied the motion on November 1, 2006, holding *inter alia* (1) the Board complied with the court's remand order and (2) CPI could file a new appeal of the October 17, 2006 ruling if it felt that ruling was in error. CPI then asked the trial court to file its November 1, 2006 ruling in conformance with 12 O.S. Supp.2004 § 696.3, so that CPI could appeal the same, which the trial court also denied. CPI appealed the Board's second order to the district court. Thereafter, on OESC's motion, the trial court consolidated CPI's second appeal with its first appeal.

¶5 In affirming the Board's decision, the trial court held CPI failed to satisfy the requirements of § 1–210(14) of the Oklahoma Employment Security Act of 1980, 40 O.S. Supp.2003 § 1–108 et seq. The 2003 version of § 1–210(14), the statute in effect at the time, provided:

> Notwithstanding any other provision of this subsection, services performed by an individual for wages or under any contract of hire shall be deemed to be employment subject to the Employment Security Act of 1980 unless and until it is shown to the satisfaction of the Commission that:
>
> (a) such individual has been and will continue to be free from control or direction over the performance of such services, both under the contract of hire and in fact; and
>
> (b) such individual is customarily engaged in an independently established trade, occupation, profession, or business; or
>
> (c) such service is outside the usual course of the business for which such service is performed and that such service is performed outside of all the places of business of the enterprise for which such service is performed.[2]

Under this statute, the party contesting the employer-employee relationship has the burden "to establish independent contractor status by showing that subpart 'a' and 'b' or 'a' and 'c' are met to the satisfaction of the Commission." *Reliable Referring Serv., Inc. v. Assessment Bd., Okla. Employment Sec. Comm'n*, 2006 OK CIV APP 150, ¶12, 149 P.3d 1078, 1081 (quotation omitted).

¶6 The trial court's order included the following factual findings. Potential dancers at CPI sign a document entitled "Work for Hire Agreement," which identifies the person as an "independent contractor." The agreement is signed only by the dancer and is not considered by CPI to be a contract. CPI screens and occasionally rejects some potential dancers on the basis of a potential dancer's suitability for the job. Dancers report to the club and sign a sign-up sheet, which is used to determine the order of dance. Dancers are paid by receiving a commission on

---

**1.** The trial court's original docket sheet entry stated the Board's decision was "reversed and remanded." On the Board's motion, however, the docket entry was later changed to reflect the Board's decision was simply "remanded."

**2.** The 2006 version of § 1–210(14)(b) does not include "trade, occupation [and] profession." Subsection 14 remains unchanged in all other relevant respects.

drinks which they solicit from customers when not dancing. The prices of drinks are set by CPI and the dancer receives a percentage of that price as determined by CPI. Dancers receive no minimum wage and have no control over the amount of money charged for drinks or the percentage they receive from drink sales. CPI does not control how long a dancer performs, what music she dances to, whether she dances at different clubs, or what dates and times she will appear to work. CPI enforces rules requiring non-intoxication and the covering of certain body parts, and regularly asks dancers to leave the club when it deems they are acting inappropriately.

¶ 7 The record also contains evidence that CPI requires prospective dancers to show proof of their age; CPI's dancers provide their own costumes and stage props, and they are free to work for other establishments; CPI does not provide any training or instructions regarding how their dancers are to dance or perform; and CPI informs its dancers of their obligation to observe regulatory authority ordinances and laws.

■ ¶ 8 CPI now appeals from the trial court's judgment. This Court's review of an administrative agency's findings of fact and conclusions of law is governed by the Oklahoma Administrative Procedures Act (APA), 75 O.S.2001 § 250 et seq. Under the APA, trial and appellate courts apply the same review standards to the administrative record. *City of Tulsa v. State ex rel. Pub. Employees Relations Bd.*, 1998 OK 92, ¶ 12, 967 P.2d 1214, 1219. Except in certain cases of alleged irregularities in procedure before the agency, the review is confined to the record made before the administrative agency. *Id. See* also 75 O.S.2001 § 321. "Generally, an administrative decision like that here should be affirmed if it is a valid order and the administrative proceedings are free from prejudicial error to the appealing party." *City of Tulsa*, 1998 OK 92 at ¶ 12, 967 P.2d at 1219. *See* also 75 O.S.2001 § 322(3). "An administrative order, however, is subject to reversal if an appealing party's substantial rights are prejudiced because the agency's decision is entered in excess of statutory authority or jurisdiction, or an order is en-

tered based on an error of law." *City of Tulsa* at ¶ 12, 967 P.2d at 1219. *See* also § 322(1)(b) & (d). "Reversal is also appropriate if the agency's findings are clearly erroneous in view of the reliable, material, probative and substantial competent evidence in the record." *City of Tulsa* at ¶ 13, 967 P.2d at 1219. *See* also § 322(1)(e). Upon review of factual questions, neither a district court nor this Court may substitute its judgment for that of the agency as to the weight of the evidence. *City of Tulsa* at ¶ 12, 967 P.2d at 1219.

■ ¶ 9 The sole substantive issue in this appeal is whether the Board properly classified CPI's dancers as employees rather than independent contractors. CPI asserts the Board's decision, as well as the trial court's order, are not supported by the evidence. We disagree.

¶ 10 Pursuant to 40 O.S. Supp.2003 § 1-210(14)(a), CPI was obligated to show its dancers have been and will continue to be free from control or direction over the performance of their services, both under the contract of hire and in fact. In *Sanders v. Oklahoma Employment Sec. Comm'n*, 1967 OK 160, 430 P.2d 789, the Court reiterated that the most important point in determining whether an individual is an employee or independent contractor is whether either party may terminate the relationship without liability. *Id.* at ¶ 24, 430 P.2d at 793. Furthermore, "It is the power of control, not the fact of control, that is the principal factor in distinguishing a servant from a contractor." *Brenner v. State ex rel. Okla. Employment Sec. Comm'n*, 1948 OK 273, ¶ 13, 201 Okla. 70, 201 P.2d 236, 240, *quoting Industrial Comm'n of Colo. v. Bonfils*, 78 Colo. 306, 241 P. 735, 736 (1925). "[T]he right immediately to discharge involves the right of control." *Brenner* at ¶ 13, 201 P.2d at 240, *quoting Bonfils* at 736.

¶ 11 A fact pattern similar to the instant case was addressed in *Sanders*. There, the owner of three barber shops "leased," pursuant to a written agreement, chair space to barbers for a set period of three years. The barbers supplied their own hand tools and paid Sanders thirty percent of their earnings. Sanders claimed the barbers were indepen-

dent contractors because he paid them no wages and exercised no control over them, although Sanders had the authority to dismiss or terminate any barber on thirty days written notice. *Sanders*, 1967 OK 160 at ¶¶ 3–4, 430 P.2d at 790. The OESC determined the barbers were employees, rather than independent contractors, and assessed unemployment taxes.

¶ 12 In affirming the tax assessment, the *Sanders* Court held the "lease" agreements were nothing more than contracts for employment, *Id.* at ¶ 14, 430 P.2d at 791, and that Sanders' reservation of the right to discharge a barber within thirty days constituted effective control. *Id.* at ¶ 24, 430 P.2d at 793. The Court also noted Sanders was required to exercise control over his barbers by virtue of state health laws:

> Sanders, as proprietor of the barber shops, is specifically charged with such supervision and management as is necessary for compliance with the sanitary and barber regulations. With this mandatory responsibility Sanders has a right and duty to control the actions and conduct of the barbers, ...

*Id.* at ¶ 21, 430 P.2d at 792.

¶ 13 In the present case, like in *Sanders*, the evidence shows the workers perform on the proprietor's premises, laws require the proprietor to exert control over the workers' performance, the proprietor can dismiss its workers at any time, and either party can terminate their relationship without liability. These facts support the Board's determination that CPI exercised control over its dancers within the meaning of § 1–210(14)(a). *See* also *Harrell v. Diamond A Entm't, Inc.*, 992 F.Supp. 1343 (M.D.Fla.1997) (exotic dancers held employees under Fair Labor Standards Act minimum wage provisions even though dancers had no set work schedule, were remunerated solely by customer tips and provided own costumes; dancers worked on proprietor's premises and proprietor enforced licensing laws); *Yard Bird, Inc. v. Virginia Employment Comm'n*, 28 Va.App. 215, 503 S.E.2d 246 (1998) (exotic dancers held employees for purposes of state unemployment taxes notwithstanding "Independent Contractor Agreement" and fact

that most of dancers' income was from customer tips, dancers scheduled own performances, worked at other establishments and were issued 1099s; proprietor had power to enforce regulatory laws, provided the facility and could terminate any dancer at will).

¶ 14 Even if CPI had proved a lack of control under § 1–210(14)(a), the business did not establish the dancers were "customarily engaged in an independently established trade, occupation, profession, or business" within the meaning of § 1–210(14)(b). CPI's dancers have "no proprietary interest in a business to the extent that they could operate it without hindrance from" CPI and they are "dependent on [CPI] for their employment...." *Brenner*, 1948 OK 273 at ¶ 21, 201 P.2d at 242 (holding tailors were employees under unemployment compensation laws because they were subject to proprietor's control). "Their endeavor exist[s] only by reason of their employment by [CPI], and subject to [its] willingness to retain them and constantly subject to discharge, at which time they were out of employment." *Id. See* also *Harrell*, 992 F.Supp. at 1351 (an exotic dancer "owns no enterprise").

¶ 15 In reaching the above conclusion, we specifically reject CPI's argument that the dancers' ability to work at other establishments proved they are independent contractors.

> The evidence that the dancers perform at other clubs does not conclusively prove they are engaged in independently established businesses. The other clubs might treat the dancers as employees.... The fact that a person may work several part-time jobs, even in the same industry, does not necessarily make him or her an independent contractor.

*Yard Bird*, 503 S.E.2d at 251. The evidence supports the Board's determination that CPI's dancers are employees rather than independent contractors.

¶ 16 As previously stated, CPI sought to have the Board's second order set aside, modified or reversed by motion, which the trial court declined to do. CPI now argues the trial court erred in denying the motion without first having reviewed the transcript

or evidence from the second Board hearing. It is readily apparent from our review of the record that the trial court's decision to deny the motion was based solely on the court's interpretation of law that CPI was required to file a new appeal to obtain review of the second Board order. CPI has cited no persuasive authority, and we find none, to support its argument that the trial court was required to review any evidentiary material before making that decision.

■ ¶ 17 More troublesome, however, is CPI's final argument, with which this Court agrees, that it was wrongfully forced to file a second appeal to the district court after the hearing on remand. As previously set forth, the trial court's remand order was specifically predicated upon 75 O.S.2001 § 322(2). That subsection provides in relevant part that in any proceeding for the review of a state agency order:

> The reviewing court, . . . in the exercise of proper judicial discretion or authority, may remand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue.

¶ 18 Pursuant to § 322(1), a trial court on review of an agency order may "set aside or modify the order, or reverse it and remand it to the agency for further proceedings" under certain enumerated circumstances. The trial court may simply affirm an agency order pursuant to § 322(3) where the order is found to be valid and the proceedings are free from error. As OESC correctly argued in its motion to correct the docket entry to reflect the trial court's intent to "remand" rather than "reverse and remand" the Board's original decision, a trial court's decision under either subsection (1) or subsection (3) creates a final appealable order. Such is not the case with subsection (2). A trial court decision pursuant to subsection (2) creates, as OESC also correctly argued below, an unappealable interlocutory order.

¶ 19 The real issue here is whether CPI was wrongfully forced to file a second appeal because the Board refused to forward the transcript and evidence from the remand hearing in the absence of such an appeal. OESC argues that, pursuant to 40 O.S.2001 § 3-403, the Board was not required to file the transcript and record of the remand proceedings until sixty (60) days after receipt of CPI's petition for review of the second order. We hold § 3-403 is inapplicable where an administrative agency hearing is conducted pursuant to a § 322(2) remand order. Rather, we believe subsection (2) clearly contemplates that on remand, an administrative agency will take and consider further evidence—even amend or reverse their original decision—before forwarding such evidence and/or decision back to the trial court pursuant to the remand order. Subsection (2) specifically states that any remand for further evidence may be done if the court deems it "essential to a proper disposition *of the issue.*" (Emphasis added). The "issue" contemplated by this provision, we conclude, is the issue pending in the appeal from which the remand order emanates. Any new evidentiary material introduced or decision rendered after remand must then be forwarded to the trial court in which the appeal is pending.

¶ 20 In this case, the Board should have forwarded the remand hearing transcript and evidence to the trial court without requiring CPI to first file a new appeal. Likewise, CPI should not have been forced to initiate—and pay the filing fee for—a second appeal. We also believe the trial court erred in advising CPI to file a second appeal if it felt aggrieved by the second Board order. Rather, the better practice would have been for the trial court to have directed the Board to file, in the original appeal, the transcript and evidence from the remand hearing.[3]

¶ 21 In sum, CPI was wrongfully forced to file two separate appeals for the same facts arising out of the same assessment proceeding. CPI asserts in its appellate brief that

---

3. The trial court's consolidation of the two appeals is puzzling. The respective actions of the Board (in refusing to forward the remand evidence without a second appeal) and the trial court (directing CPI to file a second appeal) evinced a belief that the original appeal was concluded upon remand. If that were the case, however, consolidation of the two appeals would not have been necessary.

such procedure burdened it with unnecessary costs and expenses associated with the second appeal. It does not appear CPI has sought the reimbursement of such costs in the trial court and we decline to address that issue in the first instance on appeal. *See Jones v. Alpine Inv., Inc.*, 1987 OK 113, ¶ 11, 764 P.2d 513, 515. However, nothing herein should be construed to prohibit CPI from raising this claim in the trial court.

¶ 22 Notwithstanding the errors discussed above, we conclude the trial court properly denied CPI's motion to set aside, modify or reverse the second Board decision. The Board's decision to uphold the tax assessment against CPI, whether in the form of the original decision or the decision after remand, was then pending before the trial court in the original appeal. We find no fault in the court's refusal to resolve that issue presented by motion, rather than address the merits of the Board's decision after a full review of the record. We also detect no procedural impediment to this Court issuing a decision in the instant appeal. Despite the fact CPI was forced to file an unnecessary second appeal, the two appeals, encompassing the identical subject matter and parties, were consolidated for review and the trial court's order affirming the tax assessment was based upon all the evidence adduced before the Board at both hearings. And while the Court recognizes CPI was wrongfully forced to pay the expenses of a second appeal, we do not find CPI's substantial rights were prejudiced. *See City of Tulsa,* 1998 OK 92 at ¶ 12, 967 P.2d at 1219; 75 O.S.2001 § 322(3). Accordingly, the judgment of the trial court is affirmed.

¶ 23 AFFIRMED.

MITCHELL, V.C.J., and BUETTNER, P.J., concur.