2001 OK 50

**HEALTH CARE ASSOCIATES, INC., Appellee,**

v.

**OKLAHOMA EMPLOYMENT SECURITY COMMISSION, Appellant.**

**No. 92864.**

Supreme Court of Oklahoma.

June 12, 2001.

James Hasty Bellingham, Oklahoma City, OK, for Appellee.

Margaret R. Dawkins, General Counsel, Oklahoma Employment Security Commission, Oklahoma City, OK, for Appellant.

HODGES, J.

¶ 1 This matter raises the sole issue of whether certain nurses were "employees" rather than "independent contractors" for purposes of unemployment taxes. This Court holds that the nurses met the statutory requirements for independent contractor status.

¶ 2 Appellee, Health Care Associates, Inc. (HCA), places nurses on a part-time or temporary basis at hospitals and nursing homes. It requires nurses to be licensed, but otherwise exerts no supervisory control over them. HCA provides no benefits, insurance, healthcare, vacation pay, retirement, uniforms, equipment, or malpractice insurance. Continuing professional education and professional licenses are the responsibility of the individual nurse. Each nurse contracts separately with HCA. None of the nurses are required to accept any assignment to a particular facility. They may work as little or as much as they choose. All instructions concerning nursing duties are given by the healthcare facility based on the facility's internal policies and procedures. None of the HCA owners or staff have any nursing qualifications or expertise in nursing.

¶ 3 HCA considered the nurses to be independent contractors, rather than employees, and paid no unemployment taxes. Appellant, Oklahoma Employment Security Commission (Commission), assessed unemployment taxes against HCA. Its Assessment Board determined that the nurses were employees of HCA.

¶ 4 On appeal, the district court reversed that decision holding that the nurses were independent contractors under the Employment Security Act of 1980, Okla. Stat. tit. 40, §§ 1–101 through 9–104 (1991). The Court of Civil Appeals reversed the district court and this Court granted certiorari review. The issue of law presented is reviewed *de novo*. *Kluver v. Weatherford Hosp. Auth.,* 859 P.2d 1081, 1084 (Okla.1993).

Title 40, section 1–210(14) of the Oklahoma Statutes provides:

Notwithstanding any other provision of this subsection, services performed by an individual for wages or under any contract of hire shall be deemed to be employment subject to the Employment Security Act of 1980 unless and until it is shown to the satisfaction of the Commission that:

(a) such individual has been and will continue to be free from control or direction over the performance of such services, both under the contract of hire and in fact; and

(b) such individual is customarily engaged in an independently established trade, occupation, profession, or business; or

(c) such service is outside the usual course of the business for which such service is performed and that such service is performed outside of all the places of business of the enterprise for which such service is performed.

Thus, independent contractor status exists only when subpart "a" and "b" or "a" and "c" are met.

¶ 5 The Court of Civil Appeals agreed with the Commission in holding that subpart "b" had not been met because none of the HCA nurses had a proprietary interest in a nursing enterprise operated independently from HCA and thus, are not "customarily engaged in an independently established trade, occupation, profession, or business ." The Commission opines that in order to meet the subpart "b" requirement each HCA nurse must maintain an independently established nurse's office or business with a business listing in the telephone directory and thus, a financial stake in an entity separate from HCA.[1] *Brenner v. State ex rel. Oklahoma Employment Security Commission*, 201 Okla. 70, 201 P.2d 236 (1948), is cited as controlling authority.

¶ 6 *Brenner* applied the same statutory test to a tailor who leased his shop to his former employees. There were no changes in the activities of the owner or the lessees. The tailor continued to take the orders and measure the customers while the lessees continued to make suits. The Court found that the "lessees were not interested in establishing independent businesses" and that "the reason for the reorganization of [the tailor's] business was to avoid [the unemployment] tax." *Id.* at 242.

¶ 7 *Brenner's* requirement of an independent business was applied to lessees whom the tailor claimed were individual proprietors. The only way in which the former employees could be considered to be independent contractors was by having an independently established business. By contrast, the nurses in this matter are established in an independent profession by virtue of their training and license to practice nursing. Subpart "b" does not require that these professionals each independently maintain an office. To so hold would transform the Legislature's use of the disjunctive in "trade, occupation, profession, or business" into a requirement that the nurses have both a profession *and* a business.

■ ¶ 8 The Commission warns that this holding would classify all professionals as independent contractors. That argument, however, fails to recognize the subpart "a" requirement that "[s]uch individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of hire and in fact." Only those professionals who operate free from direction or control will meet the section 1–210(14) test for independent contractor. An example of such an instance is found in *Christesson Reporting Service v. Oklahoma Employment Security Commission*, 903 P.2d 336 (Okla.Ct.App.1995) (cert. denied Sept. 29, 1995).

¶ 9 In *Christesson*,[2] the issue was whether court reporters who were assigned to reporting jobs by Christesson were "free from control or supervision" and were "sufficiently engaged in an independently established profession." *Id.* at 338. The Court of Civil Appeals noted that the court reporters were free to refuse an assignment. They deter-

---

1. As the Court of Civil Appeals noted, courts in Maryland, South Dakota, and Utah have required health professionals to have a proprietary interest in an independent enterprise in order to attain independent contractor status. *See Department of Labor, Licensing & Regulation v. Fox*, 346 Md. 484, 697 A.2d 478 (1997) (business referring dental hygienists, assistants, and others to perform temporary service in dentists' offices); *In re Hendrickson's Health Care Serv.*, 462 N.W.2d 655 (S.D.1990) (home health care nurses and aides); *McGuire v. Department of Employment Sec.*, 768 P.2d 985 (Utah Ct.App.1989) (private duty home nurse hired by patient). Courts in Connecticut, Louisiana, and New Jersey have

rejected the requirement. *See Daw's Critical Care Registry, Inc. v. Department of Labor, Employment Sec. Div.*, 42 Conn.Supp. 376, 622 A.2d 622 (1992); (provider of nurses to medical facilities on temporary basis); *Contract Management Servs., Inc. v. State ex rel. Department of Labor*, 745 So.2d 194 (La.Ct.App.1999) (temporary placement agency for nurses); *Trauma Nurses, Inc. v. Board of Review*, 242 N.J.Super. 135, 576 A.2d 285 (1990) (nurse employment broker).

2. The opinion of the Court of Civil Appeals in this matter cites the *Christesson* case in a footnote but fails to apply it to the facts presented.

mined their own hours and provided their own transportation, equipment, and supplies. Any special directions were given by the attorney or party for whom the reporting was performed. Christesson would collect payments and retain 15 or 25 per cent for its booking, administrative, and promotional services. The court reporters secured their own training, certification, license, continuing education, and association membership. The *Christesson* court held that Christesson was a broker of the services of independent contractors, a relationship "in which each party to the arrangement makes certain contributions and performs certain services in order to produce a result mutually profitable to them." *Id. citing Realty Mortgage & Sales Co. v. Oklahoma Sec. Comm'n,* 197 Okla. 308, 169 P.2d 761, 764 (1945). The court reporting service was not an employer because the critical element of control and direction, essential to an employment relationship, was missing.

¶ 10 In this matter, HCA's relationship with the nurses similarly lacked direction and control. The freedom from control by HCA along with the fact that the nurses worked in an independently established profession demonstrates that HCA is a broker of the services of individual contractors.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS VACATED; TRIAL COURT AFFIRMED.

¶ 11 HARGRAVE, C.J., WATT, V.C.J., LAVENDER, OPALA, KAUGER, SUMMERS, and WINCHESTER, JJ., concur.

¶ 12 BOUDREAU, J., dissents.

1. 40 O.S.Supp.2000, § 1–210(14)(a) and (b) or (a) and (c). See note 3 *infra.*

2. 40 O.S.1991, §§ 1–101, et seq.

3. 40 O.S.Supp.2000, § 1–210(14) provides:
EMPLOYMENT.
"Employment" means:
. . .
(14) Notwithstanding any other provision of this subsection, services performed by an individual for wages or under any contract of hire shall be deemed to be employment subject to the Employment Security Act of 1980 unless and until it is shown to the satisfaction of the Commission that:

BOUDREAU, J., dissenting:

¶ 1 I respectfully dissent. The Legislature created a presumption of employment for purposes of unemployment compensation and also provided for exclusions from that presumption.[1] In my view, today's opinion applies subpart (b) of the exclusionary test in a manner that eviscerates the statutory provision and will result in automatically excluding from unemployment insurance those persons in covered employment which requires training and a license.

¶ 2 Health Care Associates, Inc. (HCA) is a staffing agency which not only places nurses at various hospitals and nursing homes on a temporary and part-time basis but also pays the wages to those nurses. The question of whether the work of these nurses is employment within the Employment Security Act of 1980[2] must be determined by application of the tests set out in § 1–210(14).[3] Subsection 1–210(14) creates a presumption that services performed for wages constitute "employment" for purposes of the employment security act. Accordingly, the services performed by the nurses are presumed to be "employment" subject to the employment security act.

¶ 3 HCA may rebut this statutory presumption of "employment" with evidence that satisfies one of two distinct exclusionary tests, each a two-prong test, set forth in § 1–210(14). The exclusionary test involved in this case, § 1–210(14), subparts (a) and (b), requires HCA to demonstrate first, that the nurses are free from HCA's

a. such individual has been and will continue to be free from control or direction over the performance of such services, both under the contract of hire and in fact; and

b. such individual is customarily engaged in an independently established trade, occupation, profession, or business; or

c. such service is outside the usual course of the business for which such service is performed and that such service is performed outside of all the places of business of the enterprise for which such service is performed.

control or direction over the performance of their services and second, that the nurses are customarily engaged in an independently established trade, occupation, profession, or business. It is the meaning and application of subpart (b) that is presented on certiorari.

¶ 4 The seminal Oklahoma case interpreting and applying subpart (b) is *Brenner v. State ex rel. Oklahoma Employment Security Commission,* 1948 OK 273, 201 Okl. 70, 201 P.2d 236. In *Brenner,* this Court addressed the issue of whether skilled tailors were "customarily engaged in an independently established trade[.]" After years of operating a tailor business, Brenner leased his shop to several of his employees who, in turn, contracted to perform tailoring services for Brenner. When the Employment Security Commission attempted to collect taxes based upon the remuneration paid to the lessees/tailors, Brenner challenged the assessment.

¶ 5 The *Brenner* Court determined that Brenner had failed to satisfy subpart (b) of the exclusionary test. The Court observed that the lessees/tailors had no proprietary interest in the business to the extent of being able to operate it without hindrance from Brenner, they had no enterprise they could sell or give away, and they were dependent upon Brenner for their continued employment. The *Brenner* Court concluded that the tailors were not individuals customarily engaged in an independently established trade, occupation, profession or business.

¶ 6 In commenting on *Brenner,* the majority opinion acknowledges that the only way the lessees/tailors could have been considered independent contractors under § 1–210(14) was by proof that they had an independently established business. However, the majority opinion allows HCA to satisfy subpart (b) without demonstrating that the

nurses had an independently established business. The majority opinion concludes that "the nurses in this matter are established in an independent profession by virtue of their training and license to practice nursing."

¶ 7 In support of this conclusion, the majority opinion reasons that to hold otherwise "would transform the Legislature's use of the disjunctive in 'trade, occupation, profession, or business' into a requirement that the nurses have both a profession *and* a business." However, this is precisely what we did in *Brenner* when we construed subpart (b) to require Mr. Brenner to demonstrate that his lessees, tailors by *trade,* had an independently established *business.*

¶ 8 In my view, the majority opinion misses the mark when it ignores entirely the statutory language in subpart (b) which requires an individual be "customarily engaged" in an independently established profession. This statutory language requires more than a showing that the individual is engaged in an independently established profession. It requires a showing that the individual is customarily engaged in a professional endeavor other than the challenged employment.[4]

¶ 9 I cannot accept the notion that under subpart (b) the nurses in this matter are customarily engaged in an independently established profession merely because they have been trained and licensed. I concede that in a broad sense, the nurses have a proprietary interest in their training and license. However, it is not the training and license alone that prove an individual is "customarily" established in a profession, rather it is the fact that the individual by reason of such training and license engages in a professional economic enterprise where he/she bears the risk of his/her own unemployment.[5]

---

4. *Brenner,* 201 P.2d at 242; and *Fuller Brush Co. v. Industrial Commission,* 99 Utah 97, 104 P.2d 201, 203 (1940), 129 A.L.R. 511, cited with approval in *Perma–Stone Oklahoma City v. Oklahoma Employment Security Commission,* 1954 OK 322, 278 P.2d 543. See also, *Union Avenue Social Club, Inc. v. J.N. Peet,* 249 Or. 135, 437 P.2d 730, 731 (1968) (Independently established business under the employment security statutes does not mean the work the employee is doing

for the defendant employer, it means other work of the same nature that the employee is doing.).

5. The public policy and purpose of the employment security act is to lighten the burden of unemployment upon the workers and their families and the provisions of the act must be interpreted and applied in light of its public policy. 40 O.S.1991, § 1–103; and *Realty Mortgage & Sales Co. v. Oklahoma Employment Security*

¶ 10 While the majority opinion implicitly abrogates the subpart (b) requirement for all professionals and perhaps all license holders, it assures us that professionals will still have to satisfy the "subpart 'a' requirement that '[s]uch individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of hire and in fact.'" However, this is not the test for rebutting the statutory presumption of covered employment set forth in § 1–210(14) which requires the entity to prove the individuals at issue meet both subparts (a) and (b). Control over the individual is a separate issue from whether the individual is customarily engaged in an independently established trade, occupation, profession, or business.

¶ 11 Because there is no evidence in the record that the nurses are customarily engaged in an independently established profession, I must respectfully dissent.

*Commission,* 1945 OK 268, 197 Okl. 308, 169 P.2d 761.