2007 OK CIV APP 30

**EXPRESS BUS, INC., Plaintiff/Appellee,**

v.

**OKLAHOMA EMPLOYMENT SECURITY COMMISSION, Assessment Board of Oklahoma Employment Security Commission, James Sommer, and Kevin Vonhauenstein, Defendants/Appellants.**

No. 102,481.

Court of Civil Appeals of Oklahoma, Division No. 4.

March 21, 2007.

Robert O. O'Bannon, Bonner J. Gonzalez, Phillips, McFall, McCaffrey, McVay & Murrah, P.C., Oklahoma City, OK, for Plaintiff/Appellee.

Tracy D. Baldwin, Oklahoma Employment Security Commission, Oklahoma City, OK, for Defendants/Appellants.

DOUG GABBARD II, Presiding Judge.

¶ 1 Defendant, the Oklahoma Employment Security Commission (OESC), appeals a district court judgment reversing a decision by Defendant, OESC Assessment Board (Board), that assesses unemployment taxes against Express Bus, Inc. (Express Bus), after the Board found that Kevin VonHauenstein (Claimant) was an employee and not an independent contractor. We affirm.

## BACKGROUND

¶ 2 Express Bus is a company that delivers school buses from factories in Oklahoma and Arkansas to locations throughout the United States. Express Bus contracts with individuals to drive these buses to the bus manufacturer's customers. On August 27, 2003, Express Bus and Claimant executed a written "Independent Contractor Agreement," in which Claimant agreed to make such deliveries.

¶ 3 Pursuant to this contract, Claimant made his first school bus delivery on September 27, 2003. He made his last delivery for Express Bus on July 10, 2004. He then filed a claim for unemployment benefits. OESC performed an investigative audit and concluded that Claimant was an employee of Express Bus, not an independent contractor. OESC assessed benefit wage charges to the account of Express Bus. Express Bus appealed to the Board. After a hearing, the Board affirmed the OESC decision, finding that Express Bus had not met its burden of proving that Claimant was an independent contractor. Express Bus appealed to the District Court of Tulsa County, Oklahoma. The trial court reversed, finding the Board's decision was clearly erroneous and not supported by the evidence. Defendants now appeal.

## STANDARD OF REVIEW

¶ 4 The Oklahoma Employment Security Act of 1980 (the Act) establishes the standard of judicial review in appeals of Board decisions as follows:

> In any judicial review under this part, the finding of the Commission, or its duly authorized representative, as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.

Title 40 O.S.2001 § 3–404. Because the Act was designed to provide unemployment benefits to *employees* who have lost employment "through no fault of their own," the issue of whether an employment relationship exists is jurisdictional, and presents a question of law. 40 O.S.2001 § 1–103; *see also Perma–Stone Okla. City Co. v. Okla. Employment Sec. Comm'n,* 1954 OK 322, 278 P.2d 543.

¶ 5 We review questions of law using a *de novo* standard. *Health Care Assoc., Inc. v. Okla. Employment Sec. Comm'n,* 2001 OK 50, ¶ 4, 26 P.3d 112, 113. Under *de novo* review "(a)n appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." *Johnson v. City of Woodward,* 2001 OK 85, ¶ 5, 38 P.3d 218, 222.

## ANALYSIS

¶ 6 As indicated above, the determination of the employment relationship is central to the Act. In this regard, the Act, at 40 O.S. Supp.2003 § 1–210(14) (the version in effect at the time of the events relevant herein), provides:

> Notwithstanding any other provision of this subsection, services performed by an individual for wages or under any contract of hire shall be deemed to be employment subject to the Employment Security Act of 1980 unless and until it is shown to the satisfaction of the Commission that:
>
> (a) such individual has been and will continue to be free from control or direction over the performance of such services, both under the contract of hire and in fact; **and**

> (b) such individual is customarily engaged in an independently established trade, occupation, profession, or business, **or**
>
> (c) such service is outside the usual course of the business for which such service is performed and that such service is performed outside of all the places of business of the enterprise for which such service is performed.

(Emphasis added). This statute, also called the ABC test, presumes the existence of an employer-employee relationship between the parties unless the specific exemptions are shown. *Reliable Referring Serv., Inc. v. Assessment Bd.,* 2006 OK CIV APP 150, ¶ 12, 149 P.3d 1078, 1081. Thus, any company desiring to show the existence of an independent contractor relationship has the burden of proving either subparts (a) and (b), **or** subparts (a) and (c) of the statute. The exemption must be proven by "substantial evidence," that is "evidence . . . [that] affords a substantial basis in fact from which the fact in issue can be reasonably inferred," or which "a reasonable mind might accept as adequate to support a conclusion." *Okla. Employment Sec. Comm'n v. Sanders,* 1954 OK 155, ¶¶ 8, 9, 272 P.2d 379, 381 (citations omitted). Here, Express Bus asserts that it proved both subparts (a) and (b).

¶ 7 Under subpart (a), workers are not independent contractors unless they are "free from control or direction over the performance of . . . services." This language is consistent with the Supreme Court's view that an independent contractor is "[o]ne who engages to perform a certain service for another, according to his own manner and method, free from control or direction of his employer in all matters connected with the performance of service, except as to the result or product of work." *Perma–Stone,* 1954 OK 322, 278 P.2d 543 (court syllabus no. 3).

¶ 8 In the present case, Express Bus and Claimant signed a written "Independent Contractor Agreement" specifically providing that Claimant would supply, at his own expense, all materials, supplies, equipment, and tools required to make the deliveries; that payroll taxes would not be withheld by the company on Claimant's behalf, nor would he

be treated as an employee for any purpose; that Claimant was not entitled to any pension, health, or other fringe benefits of the company; that Express Bus would not obtain workers' compensation insurance on Claimant's behalf; that either party could terminate the agreement for any reason, with or without cause; and that Claimant could not assign the contract, or any delivery, to anyone else.

¶ 9 At the Board hearing, evidence was also presented that Express Bus only employed drivers who were at least 25 years of age, possessed a commercial driver's license, had two years of on-the-road driving experience, had a clean driving record, and could pass a Department of Transportation-mandated physical and DOT-sanctioned drug test. Contractors were not required to report to Express Bus on a daily basis, since it had no business location. Delivery arrangements were made by phone. If contractors desired to make a delivery, they could call Express Bus and, if a delivery was available and offered to them, they could either accept or refuse. If they accepted a delivery, they were asked when the delivery would be completed. The contractor then decided when to pick up the bus, and he or she made all driving decisions, including the route to be taken. The only limitation on the contractor's driving authority was compliance with DOT regulations.

¶ 10 Each contractor used his or her own vehicle to reach the factories in Oklahoma and Arkansas where the buses were picked up. Contractors used their own equipment, if needed, to complete the delivery. They were paid on a per-job basis depending upon the actual miles driven, and were not reimbursed for gas, meals, or other expenses. Contractors could, and actually did, work for other companies in addition to Express Bus. Furthermore, either party could terminate the contract for any reason and at any time.

¶ 11 In *Page v. Hardy,* 1958 OK 283, 334 P.2d 782, one of the earliest cases in which the Oklahoma Supreme Court addressed the distinction between employees and indepen-

dent contractors, the Court considered the following factors:

(a) the nature of the contract between the parties, whether written or oral;

(b) the degree of control which, by the agreement, the employer may exercise on the details of the work or the independence enjoyed by the contractor or agent;

(c) whether or not the one employed is engaged in a distinct occupation or business and whether he carries on such occupation or business for others;

(d) the kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(e) the skill required in the particular occupation;

(f) whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work;

(g) the length of time for which the person is employed;

(h) the method of payment, whether by the time or by the job;

(i) whether or not the work is part of the regular business of the employer;

(j) whether or not the parties believe they are creating the relationship of master and servant; and

(k) the right of either to terminate the relationship without liability.

*Id.* at ¶ 10, 334 P.2d at 784–85.

¶ 12 An examination of these factors compels a conclusion that Claimant was an independent contractor free from control over the performance of his services: (1) the parties had a written contract specifically establishing an "Independent Contractor" relationship; (2) Claimant made all driving decisions, including the route selected; (3) Claimant's occupation as a truck driver was not dependent upon his employment by Express Bus, and, while there was no evidence that he worked for other companies,[1] there was no impediment to him doing so and other Ex-

---

1. Interestingly, OESC did not question Claimant during the investigation, nor was he called by either party to testify during the Board hearing.

press Bus drivers did so; (4) Express Bus provided no direct supervision over its drivers, nor was direct supervision necessary; (5) driving a school bus required a person who possessed a valid CDL or other specialized training; (6) Claimant was required to supply all the materials and equipment necessary for the job and to pay for his meals and other expenses; (7) Claimant was paid by the job, not by the hour; (8) both parties acknowledged in the contract that Claimant was an independent contractor, not an employee; and (9) both parties had the right to terminate the relationship at any time, without liability.

¶ 13 Although the contract was open-ended and Claimant's delivery of school buses was part of the regular work of Express Bus, the Board's hearing officer reached his conclusion primarily based upon the factor that:

> [T]he employer does exercise control and direction over the performance of the services. *That control is minimal while the driver is on the road* but the employer controls the distribution of work by obtaining contracts to deliver buses and offering the deliveries to the drivers. The employer also administers and enforces various DOT regulations. Finally, and *most significantly, the employer imposes additional requirements of their own, above those required by DOT or the customers, for the performance of the work. The employer requires the drivers to be above a certain age and to have a certain amount of on the job experience. These requirements are not consistent with an independent contractor relationship. If a person is operating their own business then their age and amount of experience are at their own discretion, subject only to legal or regulatory requirements.* (Emphasis added.)

We disagree with the hearing officer's rationale and conclusion.

¶ 14 The hearing officer specifically found that Express Bus' control was "**minimal** while the driver is on the road." More to the point, this was the only control Express Bus had over Claimant since he had no job duties *except* driving. He was not required to report in person or by phone on a daily basis,

or otherwise. He was not under an exclusive contract, but could work for other companies. He could decline any delivery offered. He was free to choose the delivery route taken, and to make any and all driving decisions. He could terminate the agreement at any time.

¶ 15 By requiring "drivers to be above a certain age and to have a certain amount of on the job experience," Express Bus was not exercising control over Claimant's work performance. It was merely setting standards for contractor eligibility. Most companies have such standards whether they hire employees or subcontractors. Similarly, the fact that Express Bus controlled the distribution of work by obtaining delivery contracts and offering these contracts to drivers is not unique to companies with employees, as opposed to those who subcontract. Virtually every service company obtains contracts, sets employment or subcontract eligibility requirements, and establishes standards related to the performance of the work involved. For example, federal construction contractors are often required to have far more stringent requirements for *subcontractor* eligibility and *subcontract* performance, than did Express Bus here.

¶ 16 In *Mahan v. NTC of America,* 1992 OK 8, 832 P.2d 805, a manufacturer and driver signed a written contract specifically creating a similar "contractor-independent contractor" relationship. There, the manufacturer also obtained the jobs, offered same to driver, and instructed the driver where and when its shipments were to be delivered. The driver made all decisions regarding the details of the work, paid all operating expenses necessary to perform the driving, was free to accept jobs or deliveries with other companies, and was not paid a salary, but a percentage of the gross revenue from each delivery made. The Supreme Court held that "[t]he express contract language, the mode of payment, and the lack of control and supervision by NTC [the manufacturer] all indicate that the parties created a contractor-independent contractor relationship." *Id.* at ¶ 9, 832 P.2d at 807. *See also Duncan v. Powers Imports,* 1994 OK 126, 884 P.2d 854;

*Smith Bros. Road Constr. Co. v. Palmer*, 1964 OK 26, 389 P.2d 495; and *Christesson Reporting Serv. v. Okla. Employment Sec. Comm'n*, 1995 OK CIV APP 92, 903 P.2d 336 (distinguishing *Sanders v. Okla. Employment Sec. Comm'n*, 1967 OK 160, 430 P.2d 789).

¶17 In this case, the express contract language, mode of payment, lack of control and supervision by Express Bus, and Claimant's ability to work for other companies and to terminate the contract at any time, likewise indicate that the parties created a contractor-independent contractor relationship. The trial court correctly concluded the Board's decision as to subpart (a) of the test was contrary to the evidence and clearly erroneous.

¶18 We also find that Express Bus proved subpart (b) of the test. As written at the time,[2] subpart (b) required proof that Claimant be "customarily engaged in an independently established trade, occupation, profession, or business." The Board found that Express Bus had not met its burden of proving subpart (b) because "it presented no evidence to establish that any of the drivers are engaged in an independently established business of their own."

¶19 This conclusion is flawed for two reasons: First, it ignores evidence that Express Bus drivers also drove for other companies. Second, it assumes that an independent contractor must have *both* a trade, occupation, or profession *and* an independent business. This is incorrect.

¶20 Subpart (b) only requires that an independent contractor have an "independently established trade, occupation, profession, *or* business." *In Health Care Associates, Inc.*, 2001 OK 50 at ¶7, 26 P.3d at 114, the Supreme Court considered a similar case involving an individual who held a nursing certificate, and stated:

[T]he nurses ... are established in an independent profession by virtue of their training and license to practice nursing. Subpart "b" does not require that these

professionals each independently maintain an office. To do so would transform the Legislature's use of the disjunctive in trade, occupation, profession, *or* business' into a requirement that the nurses have both a profession *and* a business.

¶21 Here, Claimant was engaged in an independently established trade or profession. As a professional driver with a CDL, his trade or profession was not dependent upon his relationship with Express Bus since his license allowed him to obtain employment as a professional driver with any company. In fact, evidence was presented that many of Express Bus' contractors also worked for other companies. We find that Express Bus established subpart (b) of the "ABC test," and that the Board's decision is clearly erroneous and not supported by the evidence.

## CONCLUSION

¶22 We find that Express Bus met its burden of proving that Claimant was an independent contractor not covered by the provisions of the Oklahoma Employment Security Act. For this reason, the trial court's order reversing the Board's decision is hereby affirmed.

¶23 AFFIRMED.

REIF, J., and GOODMAN, J., concur.

---

2. Effective July 1, 2006, § 1–210(14)(b) was amended to read: "such individual is customarily engaged in an independently established business," thus deleting language referring to a "trade, occupation [or] profession."