Department of Employment Security
No. 2011-498

APPEAL OF ASPEN CONTRACTING NE, LLC
(New Hampshire Department of Employment Security)

Submitted: June 13, 2012
Opinion Issued: August 21, 2012

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Charla Bizios Stevens* and *Neil B. Nicholson* on the brief), for the petitioner.

*Michael A. Delaney*, attorney general (*Lisa M. English*, assistant attorney general, on the brief), for the New Hampshire Department of Employment Security.

HICKS, J. The petitioner, Aspen Contracting NE, LLC (Aspen), appeals the decisions of the Administrative Hearing Committee (Committee) and the Appeal Tribunal for the New Hampshire Department of Employment

Security (DES), as both were sustained by the DES Appellate Board, finding the claimants to be employees and Aspen to be an employer in New Hampshire subject to RSA chapter 282-A. We affirm.

The record supports the following facts. Aspen is a Delaware limited liability company with a place of business in Houston, Texas. It uses the trade name "Noble Logistics," and is in the business of providing logistical consulting services to clients for the distribution and delivery of Aspen's clients' products. Aspen does not have an office in New Hampshire.

Aspen contracted with PharMerica, a pharmaceutical company with a place of business in Concord, to deliver its products to jails, nursing homes and long-term care facilities located in New Hampshire, Massachusetts, and Vermont. Aspen retains drivers to deliver PharMerica's products. Each driver enters into what is entitled an "independent contractor agreement" with Aspen, and must first pass a background check, drug test, and motor vehicle records check before delivering PharMerica's products. The claimants, Michael Bishop-Chapman, Steven Eastman, and Mark Trumble, each entered into a contractual relationship with Aspen on October 1, 2008, June 10, 2009, and October 12, 2009, respectively.

On October 7, 2009, Aspen terminated Bishop-Chapman's contract after he failed to obtain Aspen's permission to have another Aspen-approved driver cover his delivery route. Trumble's contract was terminated on December 6, 2009, after he declined to complete his route due to a snowstorm. Eastman suspended his contract on October 23, 2009, prior to surgery, and did not return thereafter to deliver for Aspen. Each claimant filed for unemployment benefits.

In early 2010, DES found that each of the claimants had earned wages in employment from Aspen that constituted annual earnings for purposes of entitlement to unemployment compensation. It further found that the claimants' services did not meet the requirements for the exemption provided in RSA 282-A:9, III (2010), which provides a tripartite test for determining whether a worker is exempt from the definition of employment. Aspen appealed DES's determinations to the Committee and the Appeal Tribunal. In each case, the Committee and the Appeal Tribunal also found that the claimants were entitled to unemployment compensation. After requests for reopening were denied, Aspen appealed to the DES Appellate Board, at which point the cases were consolidated.

The Appellate Board sustained the decisions of the Committee and the Appeal Tribunal. It found that Aspen's rights had not been prejudiced by the findings, inferences, conclusions or the decisions of the Committee or the Appeal Tribunal. This appeal followed.

Judicial review of DES decisions is controlled by RSA 282-A:67, II (2010), which specifies the procedure for appealing "a final decision of the

[A]ppeal [T]ribunal as reversed, modified, or affirmed by the [A]ppellate [B]oard." Because the Appellate Board in this case "neither clarified nor limited" the Committee's or the Appeal Tribunal's record or determination, "but simply sustained it, we confine our review to the findings and rulings of the" Committee and the Appeal Tribunal. *Appeal of First Student*, 153 N.H. 682, 684 (2006). In reviewing decisions under RSA 282-A:67, we will not substitute our judgment for that of the Appeal Tribunal or the Committee as to the weight of the evidence on questions of fact. *See* RSA 282-A:67, V (2010); *Appeal of First Student*, 153 N.H. at 684. "Furthermore, we will uphold the department's decision unless its findings or conclusions were unauthorized, affected by an error of law, or clearly erroneous in view of all the evidence presented." *Appeal of First Student*, 153 N.H. at 684-85 (quotation omitted); *see* RSA 282-A:67, V.

■ "The purpose of our unemployment compensation statute, RSA ch[apter] 282-A, is to prevent the spread of unemployment and to lighten the burden on those workers who are involuntarily unemployed through no fault of their own." *Appeal of Boudreault*, 123 N.H. 332, 333 (1983). RSA 282-A:9, I (2010) broadly defines "employment" to mean "service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, expressed or implied, together with service performed within the state which constitutes 'employment' under the provisions of the Federal Unemployment Tax Act." RSA 282-A:9, I; *see Appeal of John Hancock Distributors*, 146 N.H. 124, 126 (2001).

■ Aspen argues that the claimants are not employees based upon the exemption provided in RSA 282-A:9, III. Under RSA 282-A:9, III:

> Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the commissioner of the department of employment security that:

> (a) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

> (b) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

> (c) Such individual is customarily engaged in an independently established trade, occupation, profession, or business.

"The burden is on the party challenging an 'employment' determination to establish that all three requirements for exclusion have been satisfied; failure to establish any of them is conclusive proof of employment for purposes of RSA chapter 282-A." *Appeal of John Hancock Distributors*, 146 N.H. at 128; *Appeal of Work-a-Day of Nashua*, 132 N.H. 289, 291 (1989). Here, the Committee and the Appeal Tribunal both found that Aspen failed to satisfy each of the three requirements of RSA 282-A:9, III. Because we agree that the requirements of subparagraph (a) were not met, we need not address the remaining findings of the Committee and the Appeal Tribunal. *See Appeal of John Hancock Distributors*, 146 N.H. at 128.

Relying upon *Appeal of Lakes Region Community Services Council*, 127 N.H. 386 (1985), Aspen argues that the claimants were free from its control or direction in the performance of services under RSA 282-A:9, III(a). Its reliance upon *Appeal of Lakes Region* is misplaced. In *Appeal of Lakes Region*, the employing entity drew from a list of individuals who could provide temporary care for disabled persons in order to give their normal custodians a short respite from responsibility. *Appeal of Lakes Region Community Services Council*, 127 N.H. 386, 387 (1985). The temporary care providers were primarily paid by the New Hampshire Department of Health and Human Services. *Id.* While the care providers had to keep a log of time spent at recipients' homes, the employing entity did "not attempt to monitor the provision of services or instruct providers what to do." *Id.* As such, they were free from the direction or control of the employing entity in the performance of their services. *Id.*

In contrast, here, the claimants were not free from Aspen's control or direction in the performance of their services. Aspen paid drivers a flat fee for delivery. While there was conflicting testimony as to whether or not the flat fees were negotiable, following Eastman's hearing the Appeal Tribunal found Aspen's representative's testimony on this matter to be self-serving and not credible. *See Appeal of Eno*, 126 N.H. 650, 653 (1985) (stating that this court does not have the authority to substitute its judgment for that of the Appeal Tribunal as to the weight of the evidence on questions of fact). Aspen assigned the claimants their routes and schedules, and reviewed their work. Moreover, Aspen occasionally directed the drivers as to the sequence in which to complete their deliveries, due to the nature of the deliveries. Although the claimants could utilize other drivers to cover their routes, the other drivers had to be pre-approved Aspen drivers, and the claimants had to obtain prior permission from Aspen to do so. Indeed, Bishop-Chapman was terminated for improperly subcontracting his route. With the exception of Trumble, each claimant

wore a photo identification badge and tee shirt identifying himself as a "Noble Logistics, Independent Contractor." Aspen also had the right to require the claimants to update their vehicles in order to keep their routes. The claimants could work independently as delivery drivers for other companies, as Bishop-Chapman did on days he was not working for Aspen, but Aspen placed significant restrictions on their ability to contemporaneously perform such work. One of the claimants was paid while being trained. They were also under the supervision of another person hired by Aspen, whom they contacted when they had difficulties with deliveries and who acted as a liaison between the drivers and PharMerica. That person was paid an additional fee by Aspen each day for this work. Thus, the drivers were not free from Aspen's control or direction over the performance of their services. *See* RSA 282-A:9, III(a).

Aspen points to *Athol Daily News v. Board of Review of the Division of Employment and Training*, 786 N.E.2d 365 (Mass. 2003), and *Express Bus, Inc. v. Oklahoma Employment Security Commission*, 157 P.3d 1180 (Okla. Ct. App. 2007), to further support its argument that the claimants were not employees under its direction or control. In *Athol Daily News*, the Massachusetts Supreme Judicial Court held that, under a statute similar to RSA 282-A:9, III, adult carriers who deliver newspapers for the Athol Daily News are independent contractors. *Athol Daily News*, 786 N.E.2d at 367. However, the facts of *Athol Daily News* are distinguishable from those in the present case. In that case, the agreement between the carriers and the newspaper "require[d] only that the newspapers be delivered in good condition and before a certain time each day." *Id.* at 371. Beyond this requirement, the carriers were "entirely free from [the Athol Daily News's] supervision in performing the services for which they were engaged." *Id.* Moreover, the carriers in *Athol Daily News*, unlike the claimants in the present case, were never directed as to the sequence in which to deliver the newspapers, did not have to wear any type of uniform, and did not need to receive prior permission for replacements to cover their routes. *Id.*

The facts of *Express Bus* are also distinguishable. In *Express Bus*, the Oklahoma Court of Appeals affirmed the decision of the District Court reversing the Oklahoma Employment Security Commission Assessment Board's determination that the claimant was an employee and not an independent contractor for Express Bus. *Express Bus, Inc.*, 157 P.3d at 1181. In doing so, the court applied a statute similar to RSA 282-A:9, III(a). *Id.* at 1182. The Assessment Board had "specifically found that Express Bus' control [over the driver] was *minimal* while the driver [wa]s on the road." *Id.* at 1184. The district court reversed the Assessment Board's finding that the claimant was an employee because the claimant "had no job duties *except* driving." *Id.* (quotation omitted). The claimant "made all

driving decisions, including the route to be taken," and could freely "work for other companies in addition to Express Bus." *Id.* at 1183. Furthermore, either party could "terminate the contract for any reason and at any time." *Id.*

In contrast, in this case, Aspen left special delivery instructions for the drivers, occasionally including the required sequence of deliveries. Further, Aspen required drivers to wear tee shirts and photo identification badges with the logo of "Noble Logistics, Independent Contractor." Despite the "independent contractor" designation, the badge and tee shirt constitute a type of uniform. The claimants were also under the supervision and direction of another person, who served as their main contact with Aspen. The Committee and the Appeal Tribunal each found that Aspen controlled the claimants' routes and schedules, and we conclude that there is sufficient evidence in the record to support these findings.

Accordingly, Aspen has failed to meet its burden of demonstrating that the claimants were not employees under RSA 282-A:9, III, or that the findings of the Committee or the Appeal Tribunal were unauthorized, affected by any error of law, or clearly erroneous in view of the record. *See Appeal of John Hancock Distributors*, 146 N.H. at 129; *Appeal of Work-a-Day*, 132 N.H. at 293.

*Affirmed.*

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.