NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Department of Employment Security
No. 2013-313


APPEAL OF NIADNI, INC. D/B/A INDIAN HEAD RESORT MOTEL
(New Hampshire Department of Employment Security)

Argued: February 20, 2014
Opinion Issued: May 8, 2014


Sheehan Phinney Bass + Green, P.A., of Manchester (Elizabeth A. Bailey on the brief and orally), for the petitioner.

New Hampshire Legal Assistance, of Concord (Daniel Feltes and Sarah Mattson on the brief, and Mr. Feltes orally), for the respondent, Norman Coulombe.

Vrountas, Ayer & Chandler, P.C., of Manchester (Christopher T. Vrountas and Adam J. Chandler on the brief, and Mr. Vrountas orally), for the New Hampshire Lodging & Restaurant Association, as amicus curiae.

HICKS, J. This is an appeal of the New Hampshire Department of Employment Security (DES) Appellate Board (board) decision that the respondent, Norman Coulombe, was an employee of the petitioner, Niadni, Inc. d/b/a Indian Head Resort Motel (the resort), who was entitled to

unemployment compensation benefits under RSA chapter 282-A (2010 & Supp. 2013). We affirm.

The record supports the following facts. The resort is located in Lincoln. Live entertainment is offered in a function room that features both a stage and public address system. Peter Spanos, the president and owner of the resort, testified that his enterprise is a "resort type business" with "a restaurant, rooms, [and] entertainment," which offers live entertainment on sixty to seventy percent of the nights that it is open. He further testified that the resort advertises upcoming entertainment in local newspapers, online promotions, and flyers, and explained that the resort spent $120,000 on entertainment in 2009, featuring approximately fifty entertainers during that year. Meals and optional lodging are provided to entertainers.

Coulombe appeared as a musical entertainer at the resort in both solo and group performances beginning in approximately 1980. He also performed at other venues but testified that he performed at the resort nearly three hundred times in the last two years that he worked there. The resort and Coulombe negotiated a pay rate for Coulombe's services, and he was paid weekly for his performances. He provided his own instruments and selected the songs he would play in his performances, though the resort asked him to perform new material prior to the end of his relationship with the resort. He reported that his last booking with the resort occurred on June 2, 2012, after which the relationship terminated. He subsequently filed for unemployment benefits with DES.

On July 19, 2012, DES determined that Coulombe was eligible for unemployment benefits. The resort appealed this determination to the DES Appeal Tribunal (tribunal). Following a hearing, the tribunal concluded that Coulombe "did not provide services in employment" under the exception contained in RSA 282-A:9, III (2010). Specifically, the tribunal concluded that the resort is in the business of, among other things, "coordinating" entertainment, which it distinguished from "the business of singing, playing instruments, or other forms of entertainment." Coulombe's request for reconsideration was denied.

Coulombe then appealed to the board. The board initially denied the appeal, but upon reconsideration, ruled that the tribunal's decision was erroneous because it drew a "distinction without substance" regarding the coordination of entertainment services. Accordingly, the board awarded unemployment benefits to Coulombe. The board denied the resort's subsequent motion to reconsider, and this appeal followed.

On appeal, the resort argues that: (1) RSA 282-A:65 (2010) required the board to affirm the tribunal's decision; (2) the tribunal's decision was legally

2

and factually correct; and (3) the board's order is "inconsistent with, and undermines, the purpose of" RSA chapter 282-A. Coulombe responds that: (1) the resort failed to prove that entertainment services in general, and Coulombe's entertainment services in particular, were outside its usual course of business under RSA 282-A:9, III(b); and (2) the board's order is consistent with RSA chapter 282-A's remedial purpose to help unemployed workers like Coulombe.

RSA 282-A:65 permits the board to reverse the tribunal only in certain circumstances. Appeal of N.H. Sweepstakes Commission, 130 N.H. 659, 662 (1988). The statute provides:

> The appellate board shall not substitute its judgment for that of the commissioner or appeal tribunal as to the weight of the evidence on questions of fact, or as to the prudence or desirability of the determination. The appellate board shall reverse or modify the decision or remand the case for further proceedings only if the substantial rights of the appellant had been prejudiced because the findings, inferences, conclusions, or the decision is:
>
> > I. In violation of constitutional or statutory provisions; or
> >
> > II. In excess of the statutory authority of the department of employment security; or
> >
> > III. Affected by reversible error of law; or
> >
> > IV. Affected by fraud; or
> >
> > V. Affected by the absence of newly discovered evidence, which was not available to the affected party upon reasonable search at the time of the first level hearing, in which case the appeal shall be remanded to the appeal tribunal.
>
> Otherwise, the appellate board shall affirm the order.

RSA 282-A:65.

Judicial review of tribunal decisions, as reversed, modified, or affirmed by the board, is confined to the record, and we cannot substitute our judgment as to the weight of the evidence on questions of fact for that of the tribunal. Appeal of N.H. Sweepstakes Commission, 130 N.H. at 662; see RSA 282-A:67, II (2010). We may reverse or modify the tribunal's decision only in limited circumstances.

The court shall reverse or modify the decision of the appeal tribunal, or remand the case for further proceedings, as determined by the court, only if the substantial rights of the appellant had been prejudiced because the administrative findings, inferences, or conclusions are:

> (a) In violation of constitutional or statutory provisions;

> (b) In excess of statutory authority;

> (c) Made upon unlawful procedures;

> (d) Clearly erroneous in view of the substantial evidence on the whole record; or

> (e) Affected by other error of law.

Otherwise, the court shall affirm the appeal tribunal's decision.

RSA 282-A:67, V.

The resort challenges Coulombe's employment status based upon the exemption provided in RSA 282-A:9, III, which excludes certain workers from the definition of "employment." See Appeal of Aspen Contracting NE, 164 N.H. 88, 89 (2012). Under RSA 282-A:9, III:

> Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the commissioner of the department of employment security that:

> > (a) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

> > (b) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

> > (c) Such individual is customarily engaged in an independently established trade, occupation, profession, or business.

"The burden is on the party challenging an 'employment' determination to establish that all three requirements for exclusion have been satisfied; failure

4

to establish any of them is conclusive proof of employment for purposes of RSA chapter 282-A." Appeal of Aspen Contracting NE, 164 N.H. at 91 (quotation omitted).

This appeal hinges upon the meaning of RSA 282-A:9, III(b).

Statutory interpretation is a question of law that we review de novo. We are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. In interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Unless we find that the statutory language is ambiguous, we need not look to legislative intent. Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation.

Appeal of Stewart, 164 N.H. 772, 775 (2013) (quotation omitted). RSA 282-A:9, III(b) sets forth two circumstances under which a service will not be considered employment: when a service is "outside the usual course of the business for which such service is performed" or when a service is "performed outside of all the places of business of the enterprise for which such service is performed." RSA 282-A:9, III(b). The provision is "disjunctive, meaning that the employer needs to show only one of the two alternatives." Sinclair Builders v. Unemployment Ins., 73 A.3d 1061, 1067 (Me. 2013) (interpreting identical Maine statutory provision). Neither party argues that Coulombe provided entertainment "outside of all the places of business of the enterprise for which such service is performed." RSA 282-A:9, III(b). Therefore, we focus on whether Coulombe's services were outside the resort's usual course of business.

"Outside the usual course of the business" can be an elusive concept. See Carpet Remnant Warehouse v. Dept of Labor, 593 A.2d 1177, 1186 (N.J. 1991) (interpreting similar provision in New Jersey statute). We have not adopted a general standard as to the meaning of this phrase, but several other courts have done so with regard to statutory provisions analogous to RSA 282-A:9, III(b). See, e.g., Mattatuck Museum v. Unemployment Comp., 679 A.2d 347, 351 (Conn. 1996); Yurs v. Director of Labor, Dep't of Labor, Div. of U.C., 235 N.E.2d 871, 875 (Ill. App. Ct. 1968); Sinclair Builders, 73 A.3d at 1067; Bigfoot's, Inc. v. Bd. of Rev. of Indus. Com'n, 710 P.2d 180, 181 (Utah 1985).

We find the Supreme Court of Connecticut's approach most useful. In Mattatuck Museum, the court examined a statutory provision similar to RSA 282-A:9, III(b), and held that "[i]f . . . an enterprise undertakes an activity, not as an isolated instance but as a regular or continuous practice, the activity will constitute part of the enterprise's usual course of business irrespective of its

substantiality in relation to the other activities engaged in by the enterprise." Mattatuck Museum, 679 A.2d at 351. We adopt this standard and conclude that Coulombe's services – and, more generally, live entertainment – were within the resort's usual course of business because they were regularly and continuously provided at the resort. See id.

The resort emphasizes its other amenities – including lodging, outdoor sporting activities, and scenic locations – to argue that the lounge and its related live entertainment are not essential to its business. The availability of these other amenities and services, however, does not negate the regular and continuous presence of live entertainment and, more specifically, Coulombe's performances at the resort. See id. Spanos testified that the resort offers live entertainment on sixty to seventy percent of the nights that it is open. Moreover, Coulombe's particular services were provided on a regular and frequent basis. He appeared at the resort for approximately thirty years and had nearly three hundred bookings in the last two years that he performed at the resort.

The resort also argues that Coulombe's services are not within its usual course of business because it "does not itself provide live music and it is not a band or a group of musicians or singers," and, "at most, [the resort] coordinates scheduling independent musicians such as Coulombe to play in the [resort] lounge." We agree with the board that this is a "distinction without substance" in this case. The resort does not merely coordinate live entertainment. In addition to the regularity of live entertainment noted above, the resort maintains various amenities, including a stage and public address system, to facilitate live entertainment, and advertises upcoming performances to attract patrons to the resort. Cf. Bigfoot's, Inc., 710 P.2d at 181 ("Since it was usual and customary for the hotel to furnish entertainment in connection with its operations, the employment of musicians . . . was within the 'usual course of the business.'").[*]

Nor are we persuaded by the resort's suggestion that the board erred by failing to appreciate that Coulombe's services merely contributed to the resort's "ambience." The resort relies upon Unemployment Compensation Commission v. Mathews, 111 P.2d 111, 119 (Wyo. 1941). In that case, the Supreme Court of Wyoming assessed the employment status of musicians performing in a restaurant and reasoned:

---

[*] The resort further argues that Bigfoot's, Inc. is distinguishable because "[t]he employer in Bigfoot's, Inc. operated a beer bar and not a diverse family-oriented resort such as [the resort's] facility" and "[t]here was no evidence referenced in the Bigfoot's, Inc. case that the beer hall owner also featured scenic attractions, dining and other family-friendly activities as part of its business and as part of its allure to guests." We are not persuaded by this distinction, for our analysis does not turn on whether the business enterprises are identical or analogous.

6

> If a restaurant owner contracts with a florist to supply flowers for his tables, is that a service within the "usual course" of the owner's business? Flowers on the restaurant tables give pleasure to the owner's guests as does music played by those who can be hired to supply it in the restaurant rooms. Are the florist and those employed by him employees of the owner? We are inclined to think not.

Id. The resort cites this language in its brief and, at oral argument, analogized Coulombe's performances to these decorative "floral arrangements" to argue that live entertainment is not in the resort's usual course of business but rather a part of the resort's "ambience."

This argument ignores the significance of Coulombe's services to the resort's business. Rather than creating mere "ambience," Coulombe's services were used to attract new business to the resort, whose president and owner testified that the business provides "entertainment." The record includes several advertisements featuring Coulombe's likeness and the name of his musical acts. Under these circumstances, we conclude that Coulombe's services were not incidental to, but rather were an integral part of, the resort's business. Cf. Sinclair Builders, 73 A.3d at 1067 ("In order to demonstrate that an individual's services are not within the employer's usual course of business, the employer must show that the service is not an integral part of the employer's business, but is rather merely incidental to it." (quotations omitted)).

Finally, the resort contends that the board's order undermines the purpose of RSA chapter 282-A. Specifically, the resort argues that Coulombe is an independent contractor who was free to perform, and did perform, for other entities, and that the unemployment compensation statute was not designed to offer assistance to such individuals. The resort further asserts that the "mischaracterization" of singers and musicians as employees could encourage New Hampshire businesses to refrain from hiring those individuals and thus jeopardize the employment prospects of independent musical artists.

"The purpose of our unemployment compensation statute, RSA chapter 282-A, is to prevent the spread of unemployment and to lighten the burden on those workers who are involuntarily unemployed through no fault of their own." Appeal of Aspen Contracting NE, 164 N.H. at 90 (quotation and brackets omitted). Because we have determined that Coulombe was an employee for the purposes of RSA chapter 282-A, our conclusion is not contrary to the statute's purpose. The resort's argument that such a decision will impose "significant legal restrictions and financial obligations" on businesses and thus "place a whole group of independent musical artists out of work" is equally

unpersuasive because the determination of whether a particular entertainer is an employee under RSA chapter 282-A turns upon the unique facts of each case.

Because the resort has failed to demonstrate that it meets the test of RSA 282-A:9, III(b), we need not consider whether it satisfied the two remaining requirements set forth in RSA 282-A:9, III(a) and (c).  See id.; cf. Appeal of Work-a-Day of Nashua, 132 N.H. 289, 293 (1989).

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN and BASSETT, JJ., concurred.